FERRIS *et al. v.* VAN INGEN & CO. *et al.* (Two Cases.)

1. Generally every partnership is dissolved by the death of one of the partners, where the partnership articles do not stipulate otherwise; yet any partner may by his will provide for the continuance of the partnership after his death, and in making this provision he may bind his whole estate, if the language of the will is clear and unambiguous that he intends to make his general assets liable for all debts contracted in continuing the trade after his death.

2. Where under such a will the sole surviving partner, who is also an executor, is authorized to carry on the business of the partnership in the firm name, "make sales and purchases of goods, negotiate loans, employ labor, renew and extend existing commercial obligations of the firm, make new notes and new contracts, and do and perform all other acts necessary to a successful carrying on of the business," and it is declared that the estate of the testator shall be chargeable with the liabilities of the firm and those of the survivor, made in conducting and carrying on the business, in the same manner and to the same extent as if he were in life, and where in pursuance thereof the survivor contracts new debts, the assets of the partnership and the individual assets of the estate are bound therefor. Under the power thus conferred the surviving partner, he being one of the two executors, with the consent of his coexecutor as provided in the will, had power and authority to make and execute a deed to the realty belonging to the partnership, for the purpose of securing the debts contracted by him in continuing the business.

3. Where in such a case the firm, prior to the death of the testator, purchased a storehouse for the purpose of carrying on its business, and gave promissory notes for the purchase-money and a mortgage to secure the same, and where a creditor took up the mortgage to prevent its foreclosure and had it transferred to him, and afterwards took the security deed above mentioned, the mortgage did not become merged in the deed, it expressly appearing from the writings that such was not the intention of the grantee in the deed.

4. Where, upon an equitable petition by creditors other than the widow of the deceased, the personal property and the real estate belonging to the firm were taken possession of by the court through its receiver, and where she filed an intervention in behalf of herself and her minor son for a year's support, which was set apart jointly to her and her son by the ordinary, the trial judge did not err in holding that the judgment for the year's support had no lien upon the partnership assets until the partnership debts were paid. Real property purchased by the firm to be used in carrying on the partnership business is in equity treated as personalty and assets of the firm.

5. There was therefore, in the present case, no error in holding that the widow was not entitled to dower in the real estate belonging to the firm.

6. Where in a case like the present, the widow, after the death of her husband, the senior partner, paid off certain notes given for the pur-

chase-money of the storehouse, with the understanding among all the parties that she should be subrogated to that extent to the rights of the mortgagee, and where two years thereafter she joined with her coexecutor, the surviving partner, in executing a security deed to a creditor, reciting therein that it was given subject to the mortgage above mentioned, and reciting the amount then due on the mortgage, the amount so recited not including what she claims to have advanced, and where, in part consideration for such deed, the creditor agreed not to foreclose the mortgage within three years, and further agreed to reduce the rate of interest thereon; *held*, that, even if the widow could be subrogated to the rights of the original mortgagee to the amount claimed by her, her right, under the facts above recited, was waived in favor of the creditor who had taken up the mortgage.

7. Where a year's support has been set aside jointly for a widow and her minor son out of the estate of the deceased husband and father, the widow represents the minor, and the latter can not file an independent intervention for the purpose of securing the payment of the judgment for year's support, without showing that the widow has failed or neglected to intervene or that she is in collusion with other creditors, or setting up some other equitable reason.

8. Where a mortgagee pays off State, county, or municipal tax fi. fas. issued against property covered by his mortgage, the fi. fas. being transferred to him, he has the same rights and priority of payment as had the State, county, or city. Where, after he has paid such fi. fas., the property is seized by a court of equity through its receiver and the transferee is enjoined from foreclosing his mortgage or asserting his lien, it is not error for the court, before final decree and in vacation, to order its receiver to pay off the tax fi. fas. out of the income received by him from the rent of the mortgaged property.

9. Where property is in the hands of the receiver and there are several creditors claiming priority as to their liens, it is not error for the court to render a final decree fixing the rights and priorities of the different creditors before the sale of the property.

Argued February 8,— Decided March 1, 1900.

Equitable petition. Before Judge Brinson. Richmond superior court. April 1, 1899.

It appears from the record that John C. Ferris and Chas. H. Ferris, father and son, were partners in a mercantile business in the city of Augusta, Georgia, and that in the year 1888 they purchased from Harris a storehouse on Broad street in that city, known as number 818, at a cost of some $18,000, paying part in cash and giving for the balance promissory notes payable one each quarter. Whether Harris made them a bond for titles does not appear, but it does appear that in 1891 he executed a deed

to the property to Ferris & Son, while they made to him a mortgage for about $13,784, with a power of sale to Harris and his assignees in the event of a default in the payment of the purchase-money notes.  It was also stipulated that if there was a failure to pay any note falling due after the date of the mortgage, the whole debt would become due unless the note was renewed by consent of Harris; that in case of such failure to pay, without renewal, Harris could sell the property and make title thereto.  In July, 1892, J. C. Ferris, the father and senior partner, died leaving a will in which he directed that the business of Ferris & Son should be continued until his youngest child, Frank, became of age.  In this will, in the first item, his personal representative was authorized "to sell, exchange, mortgage, lease, or otherwise dispose of, privately or publicly, any portion of all of [his] estate, for cash or on credit, without the order of the court of ordinary or any other court."  The second item was in part as follows:  "Being engaged in carrying on business with my son, Charles H. Ferris, under the name and style of Ferris & Son, my interest therein being one half and my said son one half, and having also in the firm name purchased the realty where we are now carrying on business, and being desirous of having this business continued to promote the welfare of my family and the interest of my partner, it is my will, and I so direct, that all of my estate of every kind and description, not only the capital employed in this business but all other property, shall from the date hereof be chargeable for the liabilities of said firm and the survivor thereof, made in conducting and carrying on the business, in the same manner and to the same extent as if I was in life, and he the survivor is authorized to make sales and purchases of goods, negotiate loans, employ labor, renew and extend existing commercial obligations of the firm, make new notes and new contracts, and do and perform all other acts necessary to a successful carrying on of the business; and it is my will, and I do so direct, that my said son . . shall continue the business and is authorized to use the firm name and to carry it on for such time and period," etc.  In the fifth item, his wife, Elizabeth Ferris, and his son, Charles H. Ferris, were nominated as executrix and executor.  It further

provided "that the survivor or the one that may qualify is authorized to exercise all the authority set forth in item first, and to consent in writing or otherwise to any contract which may be entered into in the name of Ferris & Son, so as to make the same obligatory in every way known to the law upon my entire estate as if I was in life." Elizabeth and Charles H. Ferris, named in the will as executrix and executor, qualified as such under the will. The will further provided that the wife and minor son should receive a monthly allowance for their support, the allowance being such as agreed upon by the wife and the surviving partner, C. H. Ferris, and being paid out of the profits of the business.

At the time of the death of the elder Ferris, the partnership was indebted to the firm of Van Ingen & Co., of New York, in the sum of about $6,100. The partnership was also indebted to Harris upon five past-due promissory notes for the purchase-money of the store, each note being for about $770 with accrued interest. There was a policy of life-insurance payable to the widow, Elizabeth Ferris, which she collected and with the proceeds of which she, in October, 1892, paid these past due notes, applying the $60 surplus to a note not then due. C. H. Ferris, the surviving partner, under the power conferred by the will, continued the partnership business and became further indebted to Van Ingen & Co. in a large amount. He also failed to pay the purchase-money notes for the store when they fell due, one each quarter. In 1894 Harris threatened to foreclose his mortgage, when Van Ingen & Co. purchased it for $12,000, and Harris transferred it and the notes it secured to Van Ingen & Co. The latter gave to Ferris & Son a written obligation wherein they agreed not to foreclose the mortgage within three years, and reduced the interest from 8% to 6% per annum. About the same time, to secure the indebtedness on account of Ferris & Son to Van Ingen & Co., a security deed was given by Ferris & Son to Van Ingen & Co., the consideration of which was set forth as $10,135.80. This deed recited that it was given subject to the mortgage which had been given to Harris and by him transferred to Van Ingen & Co., and on which not more than $12,500 remained unpaid, and also that there was no other in-

cumbrance on the property. This deed was signed by C. H.
Ferris as surviving partner of Ferris & Son, individually and as
executor and testamentary guardian, by Elizabeth Ferris as ex-
ecutrix and as an individual, and by Alice Potter Ferris, the
wife of C. H. Ferris. Van Ingen & Co. gave to Ferris & Son a
bond obligating themselves to reconvey the title to the property
upon the payment of the amount expressed in the deed and also
of the $12,000 due upon the mortgage given originally to
Harris. It further appears that Ferris & Son became indebted
to divers other persons, among them Mrs. Potter and others, to
whom they transferred the bond for titles from Van Ingen &
Co., assigning all their right, title, and equity of redemption in
and to the property described in the bond, and authorizing the
assignees, if they should see proper to do so, to pay off Van
Ingen & Co. and hold the legal title until themselves repaid.
This transfer was signed by Ferris & Son, Chas. H. Ferris indi-
vidually and as executor, and by Elizabeth Ferris as executrix.
In December, 1896, Mrs. Potter filed an equitable petition, in
behalf of herself and other creditors, against Ferris & Son, seek-
ing to foreclose a mortgage which Ferris & Son had given her
upon their stock of goods. She alleged that Ferris & Son were
insolvent, and prayed that a receiver be appointed to take charge
of the goods and the real estate belonging to the firm. A re-
ceiver was appointed by the judge, and, in January, 1897, Van
Ingen & Co. filed their intervention, setting up their claims
against Ferris & Son, and alleging that the mortgage which they
had purchased from Harris and the security deed above men-
tioned were superior liens upon the real estate to any of the
claims mentioned in the original petition. They prayed an
order directing the receiver to turn the real estate over to them.

Elizabeth Ferris also filed an intervention, asking that dower
might be assigned to her out of the real estate; alleging that she
had applied for and obtained a judgment for $5,000 for a year's
support for herself and her minor son, Frank; setting up the
payment by her of the purchase-money notes above alluded to,
alleging that they were paid off by her at the request of all the
parties and with the understanding that she was to that extent to
occupy the position of Harris, the mortgagee, and claiming that

she was therefore subrogated to the rights of the mortgagee as to the $5,000 thus paid by her in taking up the notes secured by the mortgage afterward transferred to Van Ingen & Co. She also alleged that the mortgage purchased by Van Ingen & Co. from Harris had become merged into the security deed given by Ferris & Son to Van Ingen & Co., that is to say, that after Van Ingen & Co. had taken the security deed, it conveying a greater estate than the mortgage, the latter became merged in the larger estate. She also alleged that C. H. Ferris, the surviving partner, had no right to carry on the business of the partnership after the death of the other partner, and that no debts contracted by him in carrying on the business bound the firm assets, and that all moneys paid to Van Ingen & Co. upon such debts were paid illegally. She prayed for an accounting by Van Ingen & Co. for the money so paid to them. The minor son of J. C. Ferris, Frank Ferris, by his next friend, also intervened, alleging that a year's support of $5,000 had been set apart to him and his mother, and that it was a claim of higher dignity than the mortgage or the security deed held by Van Ingen & Co. to secure their claims. No allegation was made by him that his mother refused to intervene or to assert the claim to the year's support, or that she was in collusion with other creditors or any one else. Nor did he attempt to give any other reason why he, and not his mother, should intervene to secure the payment of the judgment for year's support. The year's support was set apart jointly to the widow and this minor son. Van Ingen & Co. filed demurrers to the interventions of Elizabeth Ferris, the widow, and Frank Ferris, the minor. It being agreed by all the parties that there was no question of fact to be passed upon by a jury, the case was submitted to the judge for final decree upon the pleadings. He sustained the demurrers of Van Ingen & Co. to the intervention of the widow and to that of the minor, and made a final decree. The personal property having been disposed of by previous orders of the court, the final decree dealt with the real estate only. The judge held that Van Ingen & Co. had a lien of higher dignity than the claims of the widow to year's support and dower and to be subrogated to the rights of the mortgagee. He held that, under the facts alleged in the pleadings, no accounting

should be had for the money alleged to have been illegally received by Van Ingen & Co. for debts incurred by the surviving partner in carrying on the partnership business after the death of the other partner.    To this decree and the judgment sustaining the demurrers to their interventions, Elizabeth Ferris and Frank Ferris filed numerous exceptions.    They came to this court in two independent bills of exceptions, but, as the cases are so intimately associated with each other, they were argued together and are so dealt with in this court.

*J. R. Lamar* and *W. K. Miller,* for plaintiffs in error.

*Leonard Phinizy, Boykin Wright,* and *C. H. Cohen,* contra.

SIMMONS, C. J. (after stating the facts as above). 1. It was argued by counsel for the plaintiffs in error, that the surviving partner had no right or authority to continue the business of the partnership after the death of the senior partner, except by an order of the court of ordinary, and then for one year only. This contention is, under the general law of the State, sound in ordinary cases where a member of a partnership dies; but where the will of the deceased partner provides for a continuance of the business of the firm, that, as was stated in the case of *Brannon* v. *Ober,* 106 *Ga.* 168, changes the law as to his estate and gives his personal representative and surviving partner the power and authority to continue the business, to make contracts and to bind the estate of the deceased partner. In earlier times it seems that courts differed as to the right of the testator to provide for this, and differed as to the construction of wills containing such provisions. Now, however, it is well settled that a testator has the right and the power to provide for a continuance of his business or the continuance of the partnership of which he was a member, and that he may in his will direct that the whole of his estate shall be liable for the debts incurred by the surviving partner in carrying on the business of the partnership. The courts hold, however, that the language of the will giving this power to the personal representative must be "clear and unambiguous, demonstrating in the most positive manner that the testator intended to make his general assets liable for all debts contracted in the continued trade after his death." Burwell *v.* Mandeville, 2 How. (U. S.) 559. In the case just cited

Judge Story said: "It is competent for the partners to provide by agreement for the continuance of the partnership after [a partner's] death; but then it takes place in virtue of such agreement only, as the act of the parties, and not by mere operation of law. A partner, too, may by his will provide that the partnership shall continue notwithstanding his death; and if it is consented to by the surviving partner, it becomes obligatory, just as it would if the testator, being a sole trader, had provided for the continuance of his trade by his executor, after his death. But, then, in each case the agreement or authority must be clearly made out; and third persons, having notice of the death, are bound to inquire how far the agreement or authority to continue it extends, and what funds it binds; and if they trust the surviving party beyond the reach of such agreement, or authority, or fund, it is their own fault, and they have no right to complain that the law does not afford them any satisfactory redress. A testator, too, directing the continuance of a partnership, may, if he so choose, bind his general assets for all the debts of the partnership contracted after his death. But he may also limit his responsibility, either to the funds already embarked in the trade, or to any specific amount to be invested therein for that purpose; and then the creditors can resort to that fund or amount only, and not to the general assets of the testator's estate, although the partner or executor or other person carrying on the trade may be personally responsible for the debts contracted." See *Brannon* v. *Ober,* supra, and cases cited; 17 Am. & Eng. Enc. L. 1134 et seq., and cases cited; Woerner, Administration, *689, and cases cited; Willis *v.* Sharp, 113 N. Y. 586.

2. It will be seen, by reference to the extract of the will above set out, that the survivor of the firm of Ferris & Son had full and complete power to carry on the partnership business in the firm name, and make contracts which would bind the entire assets of the estate of the deceased partner. The language is clear and unambiguous, and shows beyond all doubt that it was the intention of the testator that his whole estate should be bound for the debts incurred by the survivor in carrying on the partnership business. The surviving partner assented to this

provision of the will, carried on the business, and incurred debts in the purchase of goods and other things for the benefit of the firm. There can be no question that, under the will, the survivor had authority to execute a mortgage or security deed to secure the debts thus contracted, having obtained the written consent of his coexecutor which the fifth item of the will provides for. The authority to contract debts carries the authority to secure the payment of those debts by liens or otherwise. It was argued here that the record shows that the surviving partner had paid all the debts which existed against the firm at the time of the death of the testator, and that debts contracted subsequently were not the debts of the firm but individual debts of the surviving partner, and, consequently, the latter had no power to make the security deed to secure such debts. We think we have shown that the surviving partner did have full power under the will to make new debts which would be binding upon the assets of the firm and of the estate of the testator. If the surviving partner did pay off the debts existing at the time of the death of his partner, he paid them off as partnership debts; and if in carrying on the business of the firm he subsequently created new debts, they were also partnership debts, as much so as if the testator, the deceased partner, had been in life and assented to contracting them. Under this view, there was no necessity for an accounting as between the surviving partner and the partnership, for all that was done by the surviving partner in carrying on the business of the partnership was done as acts of the firm and not of himself as an individual. It was also contended that a part of the notes owed by the firm to Van Ingen & Co. at the time of the execution of the deed were renewed notes of the old firm, and that giving these new notes was a novation. If we are right in the construction of the will and the powers thereby given to the surviving partner, the renewing of these notes was not a novation; besides, the will expressly authorizes the surviving partner to renew notes and bind the firm assets and the estate of the testator thereby.

3. It was insisted in the argument here that when Van Ingen & Co. took the security deed from Ferris & Son and purchased the mortgage from Harris, the original mortgagee, the mortgage

became merged in the deed, the latter conveying a greater estate than the mortgage. We admit that such is the general rule of law, but in equity there are exceptions. One of these exceptions is that the lesser security is not merged in the greater when it appears that the holder of both intended that a merger should not take place. In the case of *Knowles* v. *Lawton,* 18 *Ga.* 476, it was said: "Merger does not, in general, take place when the person in whom the two estates meet *intends* that it shall not take place." In that case the holder of the equity of redemption purchased the mortgage, which was in process of foreclosure, and continued the prosecution of the foreclosure suit; and this court held that this act showed that his intention was that there should be no merger of the two estates. See also 15 Am. & Eng. Enc. L. 314, and cases cited. In *Knowles* v. *Lawton* the intention was implied from the acts of the purchaser of the mortgage; in the present case it is not necessary for the court to go that far. We think the intention that there should be no merger is a necessary deduction from the writings themselves. The deed recites that it is given subject to the mortgage, giving the original amount, the date, and the names of the original mortgagors and mortgagee; gives the amount then unpaid, and states that the mortgage was then transferred and assigned by the original mortgagee to Van Ingen & Co., the grantees in the deed. In the bond for titles given by Van Ingen & Co. to Ferris & Son and others, including Mrs. Ferris, the plaintiff in error here, it was also recited that Van Ingen & Co. were not to reconvey the land until the mortgage and deed were both paid off. They also agreed that the rate of interest should be reduced from 8% to 6% per annum, and agreed that they would not exercise their power of sale, given in the mortgage, until the expiration of three years. By an independent agreement of Van Ingen & Co. it was also stipulated that they were not to foreclose the mortgage within three years, and that they extended the time of payment of the amount then due on it for that length of time, with reduced rate of interest as above recited. We think this clearly demonstrates that it was the intention of Van Ingen & Co. that the mortgage security should not become merged in the security deed; and, as before re-

marked, merger does not in equity take place when it is the intention of the parties that it shall not do so.

4. The record discloses that Ferris & Son had contracted other debts besides those owing to Van Ingen & Co., and had given to Mrs. Potter a mortgage on their stock of goods to secure their indebtedness to her. Mrs. Potter filed a creditors' bill in behalf of herself and all other creditors, alleging that the firm was insolvent, and praying for the appointment of a receiver to take charge of the goods and the store belonging to the firm. Van Ingen & Co. filed an intervention, setting up their mortgage and security deed, and asking for an order requiring the receiver to turn the realty over to them. Mrs. Ferris, the widow and executrix of the testator, filed her intervention as set out in the statement of facts, claiming that a year's support had been set apart to her and her minor son by a judgment of the ordinary, and that this judgment was of higher dignity than the mortgage held by Van Ingen & Co., or the security deed made to them by Ferris & Son and by herself as executrix and as an individual. The judgment for year's support was against the estate of the deceased partner, her husband. While it is the general rule that real estate owned by partners is held by them as tenants in common, yet when they purchase it in the firm name for the purpose of carrying on the partnership business and actually use it for that purpose, then it is partnership assets. Our code declares that a partnership "may arise from a joint ownership, use, and enjoyment of the profits of undivided property, real or personal." Civil Code, § 2626. This section recognizes that realty may be partnership property when the partners use it in carrying on their business and enjoy the profits arising from it. In the case of *Willis* v. *Henderson,* 43 *Ga.* 325, it appeared that Henderson had obtained a judgment against P. B. Jones, and had execution, issued thereon, levied upon certain land as the property of P. B. Jones. The latter filed an affidavit of illegality, setting up that the land was not his individually but belonged to him and John F. Jones as partners in farming. This court sustained the illegality, holding that the land was partnership property and could not be levied on as the property of one of the individual partners, but

that the creditor must resort to process of garnishment.   This case distinctly recognizes land as a subject of partnership property where it is used in carrying on the partnership business. Bleckley, C. J., in the case of *Baker* v. *Middlebrooks,* 81 *Ga.* 491, said upon this subject: "Perhaps, as to land in actual use by the firm in its business, there may be a sort of title in the partnership distinct from ownership as tenants in common. This would seem to be so if *Willis* v. *Henderson,* 43 *Ga.* 325, was well decided.   The code [§2626] gives some countenance to this theory."

We believe the law to be that whenever a firm purchases real estate in the firm name, with partnership funds, for partnership purposes, and actually uses it for such purposes, it does become partnership property.   17 Am. & Eng. Enc. L. 944 et seq., 1 Bates, Partn. §279 et seq.; 2 Lindley, Partn. *343 et seq.   This being so, equity will, in winding up the partnership and paying the debts, treat real estate as partnership assets. *Black* v. *Black,* 15 *Ga.* 445; *Bank* v. *Cody,* 93 *Ga.* 154, 155; 17 Am. & Eng. Enc. L. 952 et seq.; Lindley, Partn., supra. The real estate now in controversy having been purchased by the partnership, which paid part of the purchase-money in cash and gave notes, in the firm name, for the balance, and having been actually used by the partnership in carrying on its business, it should certainly be treated in equity as partnership assets, the partnership being insolvent.   In the distribution of the partnership effects, equity will apply the proceeds of the sale of this real estate to the payment of the partnership debts, according to their priorities, before the widow and minor child of the deceased partner can claim a year's support out of the proceeds. In the case of *Sellers* v. *Shore,* 89 *Ga.* 416, this court held: "On the death of a partner, the title to the personal assets of the firm is cast upon the survivor, who is charged with the administration of the same, first for the payment of the partnership debts, and secondly for paying over the deceased partner's share in the surplus to his legal representatives.   Unless there is a surplus none of the assets constitute any part of the estate of the deceased, and consequently they are not chargeable with the year's support allowed to his widow."   See also *Boone* v. *Sirrine,* 38

*Ga.* 121. Moreover, it appears that Van Ingen & Co. were the assignees of the mortgage given by Ferris & Son during the life of the deceased partner to secure the notes given for the purchase-money of the store. Consequently, under section 3472 of the Civil Code, the judgment for year's support could certainly not be paid until the purchase-money had been paid off.

5. For the same reasons the widow is not entitled to dower out of this property. She is only entitled to dower out of the property of which the husband died seized and possessed. This having been partnership property, the husband did not die seized and possessed of it in his own right. In the winding up of this insolvent partnership it is treated as personal property, and the widow is, of course, not entitled to dower in it until after the partnership debts have been paid off. In speaking of this subject, Mr. Bates in his work on Partnership (vol. 1, § 290) says: "To the extent in which real estate is converted into partnership stock, all the incidents attach to it which belong to any other stock, in so far as is consistent with the technical rules of conveyancing. . . If the partner dies, there can be no dower or inheritance or distributive share claimed; the real estate or its proceeds, until creditors are paid and copartners' claims adjusted, and dispositions of partnership real estate, whether before or after the death of a partner, are free from any incumbrance of inchoate dower, whether the sale be by the act of the partners, or on foreclosure, or under execution, or by an assignee in insolvency, or a receiver in winding up, or by a surviving partner. And whether the title be in all the partners or some of them, or solely in the husband of the claimant, is wholly immaterial. If, under the jurisprudence of any State, dower is a legal and not an equitable estate, so that a legal title would devolve upon the widow, she would hold such title in trust for the purposes of the partnership." Moreover, in the present case, the surviving partner had full power and authority, under the will, to make the security deed, by and with the consent of his coexecutor. The will stated that whatever the surviving partner did in and about the business in carrying on the partnership should be as binding on the firm assets and the estate of the testator as though the latter were

still in life, and therefore this security deed conveyed out of the partnership all title to this real estate.    Treating the security deed, then, as being as effective as though made when both partners were in life, it is clear that the widow, even if the realty had been held in the name of her husband alone, could not take dower until the debt for which the security deed had been given had been paid off and discharged.  `Kinnebrew v. McWhorter, 61 Ga. 33; Harman v. Strange, 62 Ga. 167.

6.. As before remarked, Mrs. Ferris alleged in her intervention, not only that she was entitled to a year's support and to dower out of the real estate of the partnership, but that she had paid off to Harris, the original mortgagee, $5,000 of the notes given him by the firm.    In her first intervention she alleged that this was a loan by her out of her individual property to the firm of Ferris & Son.    Subsequently she amended her pleadings and alleged that the money was paid at the instance and request of Van Ingen & Co., in order that the security for their debt might be increased by that amount by decreasing the amount due upon the mortgage debt; and that it was the understanding of all the parties that she should be subrogated to the rights of the mortgagee to the extent of her payment of these notes.    This allegation was admitted by the demurrer, and standing alone it would seem, under the authorities, that the transaction operated to subrogate her to the rights of the mortgagee to the extent of the $5,000 which she alleges she paid. But in considering the demurrer the court must look at all the allegations of the petition and to the exhibits thereto.    Attached as exhibits to her intervention are the security deed, the bond for titles, and the independent agreement of Van Ingen & Co., above recited.    From the deed it appears that Mrs. Ferris was one of the grantors therein, both as executrix and as an individual.    She signed it in both capacities.    Among the recitals in the deed is one in which it is stated that the deed is given subject to the mortgage executed by Ferris & Son before the death of the elder Ferris; that this mortgage was originally for $13,784.94; that it was dated June 4, 1891; that it was made by John C. and Chas. H. Ferris to Harris; and that upon it "there is now remaining unpaid, due or not due, and includ-

ing all interest, a sum not to exceed twelve thousand five hundred ($12,500) dollars in the aggregate, and now transferred and assigned by Harris to E. H. Van Ingen & Company." The grantors, including Mrs. Ferris, also covenanted that the premises were free and clear of all incumbrances of every nature, and warranted the title against themselves, their heirs, executors, etc., and against all other persons. This deed was executed about two years after she alleges she had paid off the purchase-money notes to the extent of $5,000. It will be observed that nothing was said by her in these recitals of any claim of lien or rights of subrogation which she had in the premises. She recited and covenanted that there was not more than $12,500 remaining unpaid upon the mortgage debt, and, according to her own allegations, that amount would not cover the amount due to Van Ingen & Co. as transferees and also this $5,000. It seems to us that if she intended to assert her right of subrogation she should have done so at the time of the execution of this deed. If she claimed the right to be subrogated to the amount of $5,000, she ought to have inserted that amount in the recitals and in the covenant, and recited the amount unpaid upon the mortgage as something more than $17,000. Instead of doing this, she covenanted that not more than $12,500 was unpaid, and she thereby induced Van Ingen & Co. to take the additional security offered for the debt due them by the partnership. Even if her claim had been at this time a just and equitable one and she had intended later on to assert it, her failure to do so at the time or to let Van Ingen & Co. know that she had any such claim was, if not an estoppel, a waiver by her in their favor of her right of subrogation.

But, it was argued, these recitals and covenants do not bind her, because she was not in her individual capacity a necessary party to the deed, and because there was, as to her, no consideration. From reading the record it is apparent that at the time this deed was made the firm of Ferris & Son was financially embarrassed. Harris, the original mortgagee, had commenced proceedings to foreclose the mortgage. The firm not only owed this debt to him, but was also indebted to Van Ingen & Co. in a large amount. Mrs. Ferris was interested in the success of the

firm; her monthly allowance under the will seems to have depended upon it; and at the majority of the minor child the partnership was to be wound up and the assets divided, unless continued by consent, and she was to be one of the distributees. It was clearly to her interest that the business should be run at a profit. There was, therefore, sufficient consideration moving to her to make the recitals and covenants in the deed binding upon her. Even were this not true, her promises would not be without consideration. It is not necessary that the consideration should move to the promissor. Section 3657 of the Civil Code declares: "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." The exhibits to the intervention show that Van Ingen & Co. bound themselves not to foreclose the mortgage until the expiration of three years from the time of the execution of the deed. They also agreed that the rate of interest on the mortgage notes should be reduced from 8% to 6% per annum. This shows that even if Mrs. Ferris had received no benefit individually, Van Ingen & Co. had sustained an injury. They agreed to postpone the collection of their debt, and they reduced the rate of interest upon it. We think there was sufficient consideration to make the deed binding upon Mrs. Ferris individually. Under this state of facts, even if she had a right to be subrogated at all to the rights of the mortgagee, her right is inferior to the claims of Van Ingen & Co. It may be replied to this that she alleges that Van Ingen & Co. knew of her right of subrogation and agreed to it. This may have been true, as she alleges, at the time she paid off the notes, but these notes were paid off in October, 1892, while the deed was executed two years thereafter, in October, 1894. She does not allege that the matter was mentioned at this later time, or that Van Ingen & Co. knew that she had not been repaid by the partnership the amount she had paid on the mortgage. If Van Ingen & Co. knew that she had paid this money and been subrogated to that extent to the rights of the mortgagee, and the business had then run on, and this new transaction had then been entered into by them and by her without reference to her right, it would be very natural that they should infer she had

been reimbursed or her claim satisfied. Another significant fact in this connection is, that while the notes she claims to have paid were indorsed in blank by the payee, they were marked "Paid" on their faces. This would seem to indicate that Mrs. Ferris had, as she at first alleged, paid off these notes, and regarded the transaction as one of general loan to the partnership rather than as a purchase of the rights pro tanto of the mortgagee. Looking at the whole record, we are satisfied that if at the time of the execution of the security deed she had any right of subrogation, she at that time waived it in favor of the claims of Van Ingen & Co.

7. As before recited, Mrs. Ferris intervened and set up the judgment of the ordinary, giving her and her minor son the sum of $5,000 for her support. For some reason not disclosed by the record, the minor also filed an intervention. Van Ingen & Co. demurred to this latter intervention, and the demurrer was sustained. This year's support was set apart jointly to the minor and the widow, and in such a case the widow represents the minor and has absolute control of the property set apart as the year's support. She can sell or dispose of it, without consulting the child, and without any proceeding in any court of law or equity, and without making the child a party in such a proceeding. She in effect becomes trustee for the child for his share of the amount set apart. If he should marry or come of age, he would not be entitled to withdraw from the widow his portion of the year's support. She would still retain it. *Miller* v. *Miller,* 105 *Ga.* 305. This being the status of the widow as to the year's support, we think the minor can not intervene and set up the same judgment which is set up by the intervention of the widow. Indeed we think the minor can not intervene at all, unless he shows that the widow has failed, refused, or neglected to do so, or that she is in collusion with other creditors, or that there is some other good and equitable reason why he should be heard in the matter. In the present case nothing of this sort was alleged, and if the interventions of both the widow and the minor had been good, then, under the pleadings, each could have recovered the full amount of $5,000, the amount set apart to them jointly. We think, therefore, that whether

or not the widow has already intervened, the minor can not intervene independently unless he shows some special equitable reason for so doing. As no such allegations were made in the intervention of the minor in this case, the demurrer was properly sustained.

8. It appears from the record that the real estate upon which Van Ingen & Co. held the mortgage and security deed had been assessed for taxes. Ferris & Son failed to pay them, and the tax fi. fas. were about to be levied upon the property by the sheriff, when Van Ingen & Co. paid the taxes and had the fi. fas. transferred to them. Pending the litigation and before final decree, Van Ingen & Co. applied to the court for an order to the receiver to pay them the amount they had thus paid out. The court granted the order and directed the receiver to pay the taxes out of the rental which he received from the real estate upon which Van Ingen & Co. had the mortgage and security deed. This was excepted to on the ground that the court had no authority to order the taxes paid before the final decree and out of the income from the property. Under section 888 of the Political Code, the transferee of a tax fi. fa. stands in the shoes of the State, county, or city by whose authority the tax fi. fa. was issued. He has the same rights and priorities that the State, county, or city would have had. Taxes, under our law, are the highest lien. The authority levying them can not be postponed to the end of a long litigation before demanding the taxes due it, but is entitled to have the taxes paid as they become due. The transferee has, under the code, the same rights and remedies. It was, therefore, not necessary for the court to await the end of this litigation and until final decree to order the tax fi. fas. paid. The taxes being of higher dignity than any other lien, it was immaterial out of what property or fund of the insolvent partnership they were paid. The fi. fas. were a higher lien upon all the property of the firm than any other lien or claim. It seems to us proper and right that they should have been ordered paid out of the income derived from the property upon which the transferees held the deed and mortgage. Nor, in our opinion, did it make any difference that the order was passed in vacation and not in term time. When a

court of equity takes charge of an estate under a creditors' petition of the kind now under consideration, it is virtually the administrator of the estate. It is always open for the purpose of administering the assets of the estate, and can direct its receiver how to administer funds in his hands as well in vacation as in term. This is especially true since the act of 1895, now section 4323 of the Civil Code.

9. The court did not err in rendering a final decree, settling the dignities and priorities of the different claims against the property, before the property was sold and the proceeds brought into court. We can not see what difference it could make whether the final decree was made before or after the sale. The decree settles the priority and dignity of each lien, and when the money is brought into court it must be distributed according to the relative dignity of the different claims. The relative dignity or priority of each claim can be settled as well before as after the sale. We have given this case careful consideration and examination, and after much study and reflection find no error in any of the rulings complained of, except that it appears that the court failed to render any judgment in favor of Mrs. Ferris as to the amount she claimed to have paid on the notes secured by the mortgage and for which she claimed to have been subrogated to the rights of the mortgagee. Taking the view of the trial judge this was possibly correct, but under our view Mrs. Ferris was entitled to have her claim paid after the claims of Van Ingen & Co. had been entirely satisfied. We therefore direct that the decree be amended so as to give Mrs. Elizabeth Ferris a judgment for the amount she paid on the mortgage debt and as to which she claims to be subrogated to the rights of the mortgagee.

*Judgment affirmed, with direction. All the Justices concurring.*