POPE *v.* HAMMOND *et al.*

No. 7179.   JULY 20, 1929.

B. W. *Fortson* and W. A. *Slaton,* for plaintiff in error.
M. L. *Felts,* contra.

GILBERT, J.   In 1919 Price executed to the Federal Land Bank a security deed to a tract of land owned by him. In 1921 and 1922 he executed three more security deeds to this tract, each with power of sale, which were subsequently transferred to Pope, who now holds them. In 1925 Hammond and Reese secured a judgment against Price and entered it on the general execution docket. Price, in February, 1928, executed a quitclaim deed to Pope, who, in February, 1929, began advertising the land for sale as was required by the power of sale in the security deeds. Hammond and Reese prayed for an injunction to prevent the sale, which was granted. The exception is to that judgment.

On the hearing the plaintiffs offered in evidence an affidavit of Price, omitting the formal parts, as follows: "that deponent gave a quitclaim deed to M. P. Pope, covering his lands located in Lincoln County, on or about the 16th day of February, 1928; that deponent had outstanding on said lands a security deed to Federal Land Bank of Columbia, and had been unable to make and meet the installments due on said loan for the past two years; that said Pope had had to take care of said installments for deponent; that deponent owed Pope other money and also owed other parties; that deponent in giving said quitclaim deed had the option of buying said property back from said Pope for approximately the amount of his indebtedness to said Pope; that said option was for twelve months from the date of said quitclaim deed; that said property was turned over to said Pope in full; that deponent had charge of and cultivated said place during the year 1928, and did not pay any rent; that he agreed to pay rent but did not make it; that deponent is living on said place now, but not cultivating any of the land; that deponent is occupying the dwelling on said place, and not paying any rent; that the main object in giving said Pope said quitclaim deed was to avoid foreclosure and sale." The plaintiffs also introduced in evidence their execution against Price.

The defendant introduced in evidence a tax execution by the tax-collector of Lincoln County, for State, county and school taxes for the year 1927 against Price, transferred to Pope on February 15, 1928, and entered on execution docket, for the sum of $127.57; and a like execution for the year 1926, for the sum of $188.40. Also receipts from the Federal Land Bank for several payments made on the amount due to that bank; also a note executed by Price, payable to Pope, dated February 9, 1923, for $3262.86 due ninety days after date, and recorded in the office of the clerk of the superior court of Lincoln County, retaining title to certain machinery and property described in the note. Defendant also introduced in evidence his sworn answer to the petition. In this answer he stated that Price cut from the lands a quantity of timber and delivered it to the defendant, who paid the value of said timber, approximately $3,000, to Federal Land Bank, thus reducing the amount of indebtedness due by Price to the bank; that the defendant, in accepting from Price a quitclaim deed, did not intend and did not in fact acquire full and complete titles to the

lands, the superior title being in the Federal Land Bank, and defendant did not intend by accepting the deed and did not in fact by such acceptance merge various titles and claims held by him into a complete title, but by accepting the quitclaim deed did in fact acquire only the possession of lands for the purpose of protecting himself in the conveyances already held by him; that all the original notes and all the original deeds obtained from Price remained in the possession of the defendant, were not canceled, were not marked paid, and were not satisfied of record; that the defendant now holds all of said papers for the sole purpose of enforcing said notes and the security therefor to the extent that the indebtedness due the defendant is secured thereby. Defendant also states in his answer that the execution held by Hammond and Reese constitutes a lien inferior to the claim held by the defendant, and, as such lien constitutes a cloud on the title of the defendant, that any sale which may be made of said lands by defendant for the purpose of paying defendant's debts secured by the lands will be affected by the existence of such judgment lien capable at some time in the future of creating a defect in the title. The answer also sets up that plaintiffs have come into court of equity praying relief; that the court should grant complete relief to the plaintiffs and to the defendant, which relief defendant says may be obtained by requiring an election within a reasonable time by plaintiffs whether they would pay off and take an assignment of the claims held by the defendant or would release said lands and personal property from the lien of said judgment, so that the defendant can dispose of the lands at their full value unincumbered by plaintiff's judgment lien. The defendant prays for a decree determining the amount due defendant by Price; that plaintiffs be given a reasonable time within which to make the election above stated, that the court determine the amount due the defendant secured by the property; that the court direct a sale of the property, subject to outstanding liens of Federal Land Bank, free from all other claims or liens; that of the total purchase-price of such sale the amount of the defendant's claims be first paid from the proceeds, that any balance of the purchase-price remaining after the payment of the defendant's claims and the cost of the sale be paid to plaintiffs; and that any balance of said purchase-price be disposed of in any way as to the court may seem right and proper; and for general relief.

■ Hammond and Reese contend that the indebtedness of Price to Pope has been satisfied by execution of the quitclaim deed by Price to Pope, and that the interest conveyed by the security deeds became merged into the greater estate conveyed by the quitclaim deed. "If two estates in the same property unite in the same person in his individual capacity, the less estate is merged in the greater." Civil Code (1910), § 3682. In *Seaboard Air-Line Ry. Co.* v. *Holliday*, 165 *Ga.* 200 (140 S. E. 507), this court held: "The coincidence of two independent estates, presently held by one and the same person or class of persons, is a necessary prerequisite to a merger; and no merger can take place until such identity of person and of present interest in point of facts exists. . . The doctrine of merger of estates is designed primarily for the benefit of one who acquires an interest in the property greater than he possessed in the first instance, *and will not be held to apply against his will to his disadvantage* [italics ours]. . . In order for legal and equitable estates to merge, the estates must be coextensive and commensurate." In the opinion, Mr. Justice Hines cited authorities for the rulings made. It is to be noted that after Pope obtained by assignment the notes and security deeds of Price, the petitioners, Hammond and Reese, obtained a judgment against Price, which constitutes a lien on the interest in the land then held by Price, which was only an equity of redemption. When Price delivered his quitclaim deed to Pope, it conveyed at most that equity of redemption, subject as it was to the judgment lien aforesaid. This quitclaim deed could have conveyed absolutely the entire interest that Price had at that time in the land, or it could have been executed as a further and additional security for the several amounts due by Price to Pope. Quitclaim deeds are not frequently employed for that purpose; but there is no valid reason why a quitclaim deed, absolute on its face, any more than a warranty deed, could not in fact be intended as security for a debt. The execution of warranty deeds, absolute on their face, but in fact intended as security for debt is a commonplace. In view of these premises, we are brought to the conclusion that the present issue, that is whether there was a merger or not, is to be determined by the intention of the parties. This is not a new doctrine. On the contrary, it has long been recognized by this court as well as by courts of last resort in other States and in such well-recog-

nized law publications, among others, as Ruling Case Law and Corpus Juris.

In *Ferris* v. *Van Ingen*, 110 *Ga.* 102, 111 (35 S. E. 347), the question arose as to whether there was a merger where the holder of a security deed obtained by a purchase a mortgage upon the same property. It was insisted that the mortgage became merged in the deed, the latter conveying a greater estate than the mortgage. This court said, speaking through Chief Justice Simmons: "We admit that such is the general rule of law, but in equity there are exceptions. One of these exceptions is, that the lesser security is not merged in the greater when it appears that the holder of both intended that a merger should not take place. In the case of *Knowles* v. *Lawton*, 18 *Ga.* 476 [63 Am. D. 200], it was said: ' Merger does not, in general, take place when the person in whom the two estates meet *intends* that it shall not take place.' In that case the holder of the equity of redemption purchased the mortgage, which was in process of foreclosure, and continued the prosecution of the foreclosure suit; and this court held that this act showed that his intention was that there should be no merger of the two estates. See also 15 Am. & Eng. Enc. L. 314, and cases cited. In *Knowles* v. *Lawton* the intention was implied from the acts' of the purchaser of the mortgage; in the present case it is not necessary for the court to go that far. We think the intention that there should be no merger is a necessary deduction from the writings themselves." And see *Pitts Banking Co.* v. *Fenn*, 160 *Ga.* 854 (129 S. E. 105). Among well-considered cases in other jurisdictions, reference is made to Beecher *v.* Thompson, 120 Wash. 520 (207 Pac. 1056, 29 A. L. R. 699). The first headnote in this case is: "A mere assignment by a chattel mortgagor of his interest in the mortgaged property to the mortgagee will not, in the absence of anything to indicate an intention to do so, merge the mortgage interest in the legal title so as to permit enforcement of a lien for repairs which is subordinate to the mortgage." In the opinion the following is quoted from 11 C. J. 689: "As was said in McCreary *v.* Coggeshall, 74 S. C. 42, 7 L. R. A. (N. S.) 433, 53 S. E. 978, 7 Ann. Cas. 693: ' The view generally held is that merger is not favored in the courts of law or equity; at least, it will not take place if opposed to the intention of the parties either actually proved or implied from the fact that merger would be

against the interest of the party in whom the several estates or interests have united.' This doctrine is sustained by an unbroken current of authority in the other States of the Union and in England." The annotations to this case in A. L. R. deal with questions where the person acquiring the two estates in property, real or personal, has not obtained possession or title.

In this case Price remained in occupation of the land, agreeing to pay rent to Pope, but that can not affect the principles involved or the rulings made under the facts of this case. It is a matter to be considered, but, in view of all the evidence, can not change the result. "If . . the purchaser at such attempted sale, at the time of the transfer, held a valid lien by mortgage on the property he sought to purchase, and neither before nor after such sale gave up, reliquished, or canceled his lien, or agreed or intended to do so, there was no merger of the lien with the title sought to be conveyed, but the same remained intact, and capable of enforcement. Aliter, if he did, as a consequence of his purchase, cancel or relinquish his lien, or if he intended to do so. *Woodside* v. *Lippold,* 113 *Ga.* 877 [39 S. E. 400, 84 Am. St. R. 267], and cases cited." *Coleman* v. *Price,* 115 *Ga.* 510 (4) (42 S. E. 5). '"At law it is declared to be the inflexible rule that a merger always takes place when a greater and a less estate coincide and meet in the same person in one and the same right without any intermediate estate. But the doctrine of legal merger is now practically extinct both in England and the United States, equitable principles being generally applied by the courts of both countries. Since a court of equity is not bound by the legal rule of merger, it will prevent or permit a merger of estates according to the intent of the parties, either actually proved or implied from the fact that the merger would be against the interest of the party in whom the several estates or interests have united; and it has been held that parol evidence is admissible to establish the facts and circumstances attending a transfer, with a view to establishing and giving effect to the intention of the parties in respect to a merger. When the circumstances under which merger ordinarily takes place are shown, the burden rests upon him who alleges that there was no merger to prove a contrary intention, or to prove facts and circumstances from which such intention will be presumed." 10 R. C. L. 666, § 27.

"It has been frequently said that at law, the rule that whenever a greater estate and a less coincide in the same person without any intermediate estate, the lesser is merged, is invariable and inflexible, and takes effect, in some instances at least, without regard to question of intention; but this has been questioned, and the tendency of at least some of the courts is to admit and apply the same principle in both law and equity. In equity the rules of law as to merger are not followed, and the doctrine of merger is not favored. Equity will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties, whether expressed or implied. The doctrine of merger has its foundation in the convenience of the parties interested; and therefore whenever the rights of strangers, not parties to the act, that would otherwise work an extinguishment of the particular estate, require it, the two estates will still be considered as having a separate continuance. Wherever a merger would operate inequitably, it will be prevented. The controlling consideration is the intention, expressed or implied, of the person in whom the estates unite, provided the intention is just and fair, and a merger will not be permitted contrary to such intent. Where there is no expression of intention, it will be sought for in all the circumstances of the transaction, and may be gathered not only from the acts and declarations of the owner of the several and independent rights, but from a view of the situation as affecting his interests, at least prior to the presence of some right in a third person. And equity will presume such an intent as is consistent with the best interests of the party." 21 C. J. 1034, § 234. In *Muscogee Mfg. Co. v. Eagle & Phenix Mills,* 126 *Ga.* 210, 219 (54 S. E. 1028, 7 L. R. A. (N. S.) 1139), this court dealt with the question of who must carry the burden of proving an intention of a merger or nonmerger; and it was held that the person making the contention must allege and prove the facts. In the opinion the court fully recognized the doctrine hereinbefore stated, that the intention of the parties would control the question, citing *Knowles* v. *Lawton* and *Ferris* v. *Van Ingen,* supra. In this case Hammond and Reese assert that there was a merger of the estate held by Pope under his security deeds with the estate acquired by quitclaim deed. We think the burden of proof rested upon Hammond and Reese. If that opinion be incorrect and the burden of proving an

intention not to merge the estates rests upon Pope, still the facts in this case demand the finding that such was his intention. That finding is demanded because the quitclaim deed brought to him no substantial security in addition to what he already held. In virtue of his security deeds he had, subject to the rights of the Federal Land Bank, a claim prior to all other persons on the entire land embraced in his security deeds. The quitclaim deed, even if in fact absolute, conveyed only an equity and extinguished the right of Price to redeem the land by payment in full. The notes and security deeds held by Pope were not canceled, or marked paid, or returned to Price. They are still retained by Pope. Pope paid taxes, and caused the fi. fas. to be transferred to him and to be entered on the general execution docket. And finally, the facts shown demand a finding that such merger is against the interest of Pope, and a court of equity will presume that he did not intend that which would be obviously to his injury.

The remaining headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*