ALMON, Justice.
This appeal involves a question of merger of legal and equitable title in one who receives both a deed to mortgaged property and an assignment of mortgages covering *48 various parcels of property including, but not limited to, the ones conveyed to him by deed. The trial court held that the plaintiff, a subsequent mortgagee of a parcel not covered in the deed, was not entitled to the relief of having the prior mortgages extinguished under the doctrine of merger.
Cecil L. Murphy, Sr. (Cecil), and his wife Margaret Ann Murphy executed a mortgage to Peterman State Bank (PSB) on October 21, 1975. The mortgage recited a face amount of $65,000 and covered the house and lot in Peterman, Alabama, where the Murphys lived (the home property). The Murphys renewed the loan secured by this mortgage for several years and received additional advances from time to time. They executed additional mortgages on this home property in 1976 and 1977, by which time the debt had increased to $155,-000.
On October 26, 1979, the Murphys renewed their debt to PSB, and on November 12, 1979, they executed another mortgage to PSB. This mortgage recited that Cecil and his wife were indebted to PSB in the amount of $257,000 and conveyed additional lands, to which we shall refer as the farm property and the Monroeville lots. This is the mortgage which appellant sued to have extinguished by virtue of the doctrine of merger.
On November 16, 1979, Cecil executed a note in favor of plaintiff/appellant Production Credit Association (PCA) for the sum of $362,000. The note was secured by a mortgage on the farm property.[1] This mortgage to PCA, dated November 16, 1979, is the basis for PCA’s request for the court to extinguish the November 12 mortgage to PSB. The Federal Land Bank of New Orleans holds a first mortgage on the farm property, which the parties concede is prior to both of the mortgages at issue here.
The Murphys continued to renew their debt to PSB until August 20, 1980, when they executed renewal notes for $112,000 and $70,000. Both notes were due and payable on August 20, 1981, and recited that they were secured by all of the mortgages which the Murphys had executed to PSB.
On July 16, 1981, Cecil and his wife executed a warranty deed to Max H. Murphy (Max) and Evelyn J. Murphy, Cecil’s parents, conveying various parcels, including the home property and the two Monroeville lots. The deed recited that the home property was conveyed subject to a mortgage to PSB, but did not mention a mortgage in connection with the Monroeville lots.
On July 21, 1981, PSB assigned to Max and his wife its interest in the mortgages and notes executed by Cecil and his wife to PSB. The mortgage assignment included the 1975, 1976, and 1977 mortgages on the home property and the November 12, 1979, mortgage on the farm property and the Monroeville lots. Max paid $205,455.56 to PSB for these assignments, which was the total amount of principal and interest due on the notes to PSB.
PCA filed this action on August 5, 1981, and amended its complaint on March 22, 1982, alleging that the notes evidencing Cecil’s debt to PCA were in default. The complaint set out in more detail the facts outlined above, then prayed the court to ascertain the principal indebtedness due from Cecil to PCA and to order that the November 12 mortgage from Cecil to PSB be declared extinguished by virtue of the doctrine of merger. Finally, the complaint requested that the court order the farm property sold, with the proceeds applied to satisfy first the Federal Land Bank mortgage and then PCA’s mortgage, and fix the amount of any deficiency in the payment of the debt owed to PCA.
The court entered a default judgment against Cecil, holding that he owed PCA $573,893.32. Max defended the action on the issue of merger and extinguishment of the PSB mortgage which he held. The *49 court heard this aspect of the case without a jury and entered a judgment that PCA was not entitled to the relief sought. PCA appeals from that judgment.
PCA contends that the court erred in failing to find a merger and in admitting evidence of debts Cecil owed to his father Max. Max counters that the question of merger depends largely on the intentions of the parties and that the disputed evidence was relevant to this question of intent. Max further argues that merger is not appropriate because the mortgage covers property not included in the deed.
In Alabama, legal title passes to the mortgagee upon execution of a mortgage and the mortgagor retains an equity of redemption, which he may convey. Under the doctrine of merger, the uniting of legal title and the equity of redemption in one owner ordinarily extinguishes the mortgage. First Nat. Bank of Mobile v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981); Trauner v. Lowrey, 369 So.2d 531 (Ala.1979); McDuffie v. Faulk, 214 Ala. 221, 107 So. 61 (1926); Barnett & Jackson v. McMillan, 176 Ala. 430, 58 So. 400 (1912).
Exceptions to the doctrine of merger are noted in A.M. Robinson Co. v. Anniston Land Co., 217 Ala. 648, 117 So. 29 (1928), and Boatright v. Fennell, 213 Ala. 10, 104 So. 1 (1925). In the former case, the Court observed,
“... one, having a mortgage on real estate, becoming the owner of the fee, ordinarily the result is a merger; yet it is a qualification thereof (1) if the intention of the parties was to keep alive the mortgage, or (2) if it is to the interest of the mortgagee to do this, or (3) necessary to his protection, and (4) this can be done without prejudice to the rights of the mortgagor or third parties as between such original parties the doctrine of merger will not apply.”
217 Ala. at 649, 117 So. at 30. See also, First Nat. Bank of Mobile v. Gilbert Imported Hardwoods, supra.
In Boatright v. Fennell, supra, the following statement appears: “It is held that a deed, to a part of the mortgaged lands, given to the assignee of the mortgage, without more, is not a merger or extin-guishment of the mortgage on the lands described therein.” Id., 213 Ala. at 11, 104 So. at 2 (citations omitted). The Court held, “The mortgage on the whole tract as described was valid and existing and subject to redemption, without diminution by reason of the conveyance of the portion of the land embraced in the deed by the mortgagor to the complainant.” Id., 213 at 12, 104 So. at 3. The holding in Boatright is a binding precedent establishing that Max’s mortgage on the farm and the Monroeville lots cannot be extinguished because Cecil did not convey the farm to Max.
In the case at bar, PCA seeks to have the November 12 mortgage on the farm and the Monroeville lots extinguished even though Cecil did not deed the farm to Max. It argues that this result should obtain because the debt evidenced by all of the PSB mortgages has been extinguished. PSB did not advance any more money to Cecil when he executed the two notes secured by the November 12 mortgage on the farm and the Monroeville lots. These notes, aggregating $180,000, renewed the loans made on the security of the mortgage on the home. The mortgage on the farm and the Monroeville lots was additional security, however, executed for the consideration of forebearance to foreclose on the home mortgage and yet another renewal of the loan with accumulated interest.
Max paid PSB the full amount of the principal and interest due on the notes for the assignment of the mortgage and notes. PCA argues that this merged legal and equitable title to the home and the Monroeville lots in Max and that the mortgage on the farm should also be extinguished because the entire debt has been paid. The notes, however, were assigned to Max, not cancelled. Max now holds these notes in the amount of $205,455.56 as a personal debt against Cecil, secured by the mortgages which Max now holds. The *50 evidence to which PCA objected shows that in July 1981 Cecil owed Max approximately $242,000 in unsecured debt. After the transactions of that month, Max had paid out another $205,000, but he held clear title to the home and the Monroeville lots and had a security interest against the farm property. The evidence of Cecil’s outstanding debt to Max was certainly relevant to Max’s intentions in purchasing the mortgages and tends to show that the mortgage should not be extinguished.
PCA points out that Code 1975, § 35-11-4, provides that when one has liens on several things, some of which are also subject to subordinate liens, the subordinate lienholders may require him to resort first to the things upon which he has exclusive liens, if he can do so without risk of loss to himself. Max replies that this section requires written notice, which PCA has not given him, but we do not think this contention is as pertinent to the issue as the fact that § 35-11-4 does not operate to extinguish a prior mortgage such as Max’s. Max has made no effort to foreclose his mortgages and so the provisions of § 35-11-4 have not been brought into effect. Moreover, nothing in PCA’s complaint or proof sought a partial merger to the extent of the value of the home property and the lots.
For the reasons stated, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.

. On December 19, 1979, Cecil executed another note to PCA for $50,000, also secured by the November 16 mortgage.