**John E. TOMPKINS, as Executor of the Last Will and Testament of Steven M. Tompkins, Deceased, Plaintiff–Appellee,**

**v.**

**The UNITED STATES of America and Internal Revenue Service, Defendants–Appellants.**

**No. 90–8825.**

United States Court of Appeals, Eleventh Circuit.

Nov. 8, 1991.

Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, David M. Moore, Brian C. Griffin, Ernest J. Brown, Washington, D.C., for defendants-appellants.

Stanley E. Harris, Jr., Karsman, Brooks & Callaway, James P. Gerard, Oliver, Maner & Grey, Julia R. Friedman, Savannah, Ga., for plaintiff-appellee.

Before FAY, EDMONDSON and COX, Circuit Judges.

EDMONDSON, Circuit Judge:

In this action to quiet title, defendant-appellant Internal Revenue Service appeals an adverse district court summary judgment enjoining the IRS from seizing the property in question and holding that plaintiff-appellee's interest in the property is superior to that of the IRS. We affirm.

BACKGROUND

In September 1985, plaintiff-appellee Tompkins sold real property in Georgia to the Hildreths, retaining a purchase money wraparound security interest.[1] At the time

---

1. The property was sold for $99,500, 90% of which was deferred. The deferred amount was secured by a purchase money, wraparound mortgage on the property. Under this type of arrangement, the mortgagee, Tompkins, remained liable on a superior (first) mortgage

of the purchase, the Hildreths owed money to the Internal Revenue Service, and the IRS had a properly filed lien on all Hildreth property, including after-acquired property. As a result, when the Hildreths acquired Tompkins' property, the IRS also acquired a lien on that property; its lien, however, was subordinate to Tompkins'.[2]

Within a year, the Hildreths defaulted, and Tompkins foreclosed, exercising his right under the security deed and state law to conduct a non-judicial foreclosure sale. In 1986, Tompkins purchased the property at the foreclosure sale for the amount of its secured interest plus fees, approximately $100,000. Although the sale was publicly advertised according to Georgia law, the IRS received no specific, individualized notification as defined in Section 7425 of the Internal Revenue Code, 26 U.S.C.A. § 7425(c)(1). Both parties agree that one of the consequences of this oversight was continuation of the IRS lien after the sale. 26 U.S.C.A. § 7425(b)(1).

In 1989, the IRS levied upon and seized the property in partial satisfaction of the Hildreths' unpaid federal income tax liabilities. Shortly thereafter, Tompkins brought this action to quiet title, asserting the levy was wrongful and seeking to enjoin sale of the property. The district court granted summary judgment for Tompkins, concluding that his lien not only survived the foreclosure sale, but also remained superior to the IRS lien.

*Tompkins' Lien*

■ State law traditionally governs the definition of property interests to which a federal tax lien may attach. *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *Acquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *United States v. Brosnan*, 363 U.S. 237, 240–42, 80 S.Ct. 1108, 1110–11, 4 L.Ed.2d 1192 (1960). Before we can evaluate the priority of the liens, we must first determine Tompkins' post-foreclosure sale property rights.

State law usually dictates that senior lienors become fee owners when they purchase at a foreclosure sale conducted on their own lien. In states that adhere to the merger doctrine, the lesser estate (or lien) "merges" into the greater estate and is thereby extinguished. Because the merger doctrine varies in its application from state to state, the former senior lienor's property interest depends upon how applicable state law treats merger.

■ Despite general codification of the merger doctrine,[3] "an intent *not* to merge will be presumed and will control" in the state of Georgia. *Gosnell v. Waldrip*, 158 Ga.App. 685, 282 S.E.2d 168, 170 (1981) (emphasis added). In addition, "in the absence of proof to the contrary, [the presumption will be] that [the mortgagee or senior lienor] intended what would best accord with his interests." *Barron Buick, Inc. v. Kennesaw Fin. Co.*, 105 Ga.App. 451, 124 S.E.2d 918, 921 (1962) (quoting 59 C.J.S. 681, Mortgages, § 441).

This equitable exception to the merger doctrine has been decisive in many Georgia cases. *See Fraser v. Martin*, 195 Ga. 683, 25 S.E.2d 307 (1943) ("Whenever a merger will operate inequitably, it will be prevented. The controlling consideration is the intention, expressed or implied, of the person in whom the estates unite.") (citation omitted); *Pope v. Hammond*, 168 Ga. 818, 149 S.E. 204 (1929) (no merger "if the continued existence of the mortgage is necessary to protect against intervening liens").

■ Both Tompkins and the IRS agree that Tompkins never manifested an intent to merge lien and fee. Tompkins' best interests compel the exception and not merger; otherwise, his entire interest in the property exception and not merger; otherwise, his entire interest in the property can be wiped out by the IRS, with no

---

despite his sale of the property, but he used the payments received from his purchaser/mortgagor, the Hildreths, to make payments on the first mortgage.

**2.** A tax lien is generally subordinate to a previously perfected security interest in real property, such as a prior mortgage. 26 U.S.C.A. § 6323(a).

**3.** O.C.G.A. § 44–6–2.

relief from his continued liability as holder of the first mortgage. The only realistic conclusion under Georgia law is that no merger of the lien and fee took place when Tompkins bought the property at foreclosure; his lien continues.

Our decision is consistent with those reflecting state merger law comparable to Georgia's. *See, e.g., United States v. Colorado*, 872 F.2d 338 (10th Cir.1989) (applying Colorado law); *First Am. Title Ins. Co. v. United States*, 848 F.2d 969 (9th Cir.1988) (applying California law).

Nor do we act inconsistently with the two circuit cases concluding that merger extinguished the senior lien. *United States v. Polk*, 822 F.2d 871 (9th Cir.1987), was resolved on the basis of Arizona law, which considers the senior lienor's intent irrelevant. *Id.* at 874. In *Southern Bank of Lauderdale County v. IRS*, 770 F.2d 1001 (11th Cir.1985), *cert. denied sub nom. Mid–State Homes, Inc. v. United States*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986), the applicable law was the law of Alabama, which espouses merger. *Id.* at 1007. Although Alabama acknowledges equitable exceptions to merger, *Bay Minette Prod. Credit Assoc. v. Federal Land Bank*, 442 So.2d 47, 49 (Ala.1983), in *Southern Bank* these exceptions were never briefed by counsel nor addressed by the court in the context of defining the senior lienor's *property* interests. "Instead, *after* the court determined that [merger had occurred and] the liens did not survive the sale, the lienors apparently argued that Alabama law would provide equitable relief on the *priority* issue." *First Am. Title Ins. Co.*, 848 F.2d at 971–72 (emphasis added).

Because federal law governs the priority of a tax lien against other claims to property, *Rodgers*, 461 U.S. at 683, 103 S.Ct. at 2137 (citations omitted), we agree with the panel in *Southern Bank* that state equitable principles cannot override federal priority standards. But a case is not binding precedent for any proposition that was not then before the court, and priority and property are two distinct issues. *Southern Bank*, therefore, does not preclude our consideration of state law in determining *property* interests. *Accord First Am. Title Ins. Co.*, 848 F.2d at 971–72. *Southern Bank* is limited and should be understood as authority only for the issues before that panel. Our approach here—relying on a state-law equitable exception to the merger doctrine—has been adopted by every other circuit that has addressed the issue we address. Applying Georgia law means that Tompkins' lien survives.

*Failure to Notify Under 26 U.S.C.A. § 7425*

▮ The argument that Tompkins' property rights (or lack thereof) post-sale can be determined by section 7425 runs counter not only to case law, but also to the plain language of the statute itself, which is entitled, appropriately, "Discharge of Liens," not "Priority of Liens." Nowhere does section 7425 indicate that the priority status of the tax lien changes when no notice (or improper notice) is given. Instead, the statute says that the sale, or ensuing title, is "made *subject to and without disturbing* [the federal] lien or title" (emphasis added).[4]

The enactment of section 7425 came about in part because Congress believed that the interests of the United States were insufficiently protected where, pursuant to state law, junior federal tax liens were being extinguished without notice to the United States. S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3748. If any pre-emptive effect was intended by Congress, we believe it is limited to pre-emption of local laws which would completely discharge the government's junior interest without clear notice to the government.

Notice provides the government with the "opportunity to review its position and determine the appropriate action without placing an undue burden on a foreclosing

---

4. Only the most torturous stretch of the phrase "subject to" would permit section 7425 to be interpreted as defining priority levels, and *that* interpretation requires ignoring the words "without disturbing" the lien.

creditor." *Id.* If notice of a non-judicial foreclosure sale is properly given and the United States consents to the sale, the sale divests the property of the government lien. 26 U.S.C.A. § 7425(c)(2). Even when the United States does not consent, proper notice gives effect to local law, which, in most cases, operates to discharge the junior liens. 26 U.S.C.A. § 7425(b)(2). The survival (not the elevation) of inferior federal tax liens is the penalty Congress intended to impose on senior lienholders who fail to give the presale notice prescribed by section 7425. *See First Am. Title Ins. Co.,* 848 F.2d at 972–73. This penalty allows the IRS to maintain the status quo of its lien, as well as benefit from future increases in the value of the property.

*Priority of Liens*

■ Having determined that both the Tompkins lien and the IRS lien continue following the foreclosure sale, we return to federal law to determine the priority of those interests. *See Rodgers,* 461 U.S. at 683, 103 S.Ct. at 2137 (citations omitted). According to the Federal Tax Lien Act, the former senior lien remains superior because it was properly perfected under state law before the IRS lien. 26 U.S.C.A. § 6323(a), (h)(1); *see also Aetna Ins. Co. v. Texas Thermal Indus., Inc.,* 591 F.2d 1035, 1038 (5th Cir.1979) (per curiam).

We therefore hold as a matter of law that Tompkins' lien survived his purchase at the non-judicial foreclosure sale, although he failed to give notice to the IRS before the sale. Furthermore, Tompkins' lien retains its priority over the federal tax lien, and the government was properly enjoined from levying on and selling the real property in question.

The district court is AFFIRMED.