This is an appeal by the plaintiff, Mrs. Johnnie M. Johnson, from an order granting summary judgment for defendants, L. Merrill Shirley, administrator ad litem of the estate of Gerald Johnson, and Elba Exchange Bank, in her action based on money had and received, wrongful foreclosure, conspiracy, and negligence. We affirm in part, reverse in part, and remand.
For a long time, Gerald Johnson and his wife, Johnnie, were customers of Elba Exchange Bank. Gerald operated a used car lot and carried a number of business accounts with the bank. On July 26, 1967, Mr. and Mrs. Johnson executed a promissory note in the amount of $7,500.00 payable to the bank, together with a mortgage on their dwelling house, which they owned as tenants in common. This mortgage did not contain a future advance or "dragnet" clause. The following year, on September 27, 1968, the Johnsons executed another promissory note and mortgage on the same property. This promissory note was in the amount of $10,500.00, and the mortgage contained a future advance clause.
Each of the promissory notes called for a minimum monthly payment and a "balloon" payment for the balance due at the end of one year. Following the execution of the notes, the bank allowed Mr. Johnson to "renew" the debts each year by "rolling them over" with new notes that incorporated the principal and accumulated interest. The renewal notes were executed from 1968 to 1982 only by Mr. Johnson, and each contained language indicating that they were made pursuant to the 1968 mortgage.
The Johnsons were divorced in 1982. The divorce judgment provided, among other things, that the dwelling house would be sold and the proceeds used to satisfy the indebtedness to Elba Exchange Bank, with any remaining balance to be divided equally between the Johnsons. *Page 167 
However, in early 1983 the bank decided to foreclose on both mortgages. The Johnsons' debt to the bank had increased from $7,500.00 in 1967 to approximately $30,000.00. Pursuant to the notice requirements of the mortgages, the bank ran a series of newspaper notices of a mortgage foreclosure sale. The notices stated that the Johnsons were in default of the indebtedness, secured by both the 1967 and the 1968 mortgage of their dwelling house, and that a public auction of the property would be held on February 10, 1983.
The sale took place as scheduled, although under unusual circumstances. On the day of the foreclosure sale, the bank agreed to lend Mr. Johnson $29,150.02. The bank took a new note and mortgage on the same property that it was foreclosing upon and did not require any additional security from Mr. Johnson. Mr. Johnson attended the auction and was the highest bidder at the sale. Consequently, he purchased the property with the $29,150.02 obtained from the foreclosing bank.
The bank then used the proceeds of the sale to satisfy the indebtedness of both the 1967 note and the 1968 note. However, the foreclosure deed executed by the bank as mortgagee, and by the auctioneer, recited only that the Johnsons were in default of the indebtedness secured by the 1967 mortgage, and that it was the "aforementioned" mortgage that was foreclosed. Likewise, the auctioneer's memorandum of sale mentioned only the 1967 mortgage as the mortgage foreclosed upon.
The new note and mortgage that Mr. Johnson executed on the date of the foreclosure sale required full payment to the bank within six months. But, approximately one month before the due date, Mr. Johnson committed suicide. In December 1983 the bank again foreclosed on the property, and it purchased the property for approximately $27,000.00. Later, the bank conveyed the property to a third party and took a new mortgage on the property for $42,736.80.
The unusual circumstances surrounding the February foreclosure sale and the bank's application of the proceeds from the sale to satisfy both mortgages led Mrs. Johnson to file this lawsuit against Elba Exchange Bank[1] and her late husband's estate. Prior to trial, both defendants moved for summary judgment, their motions being based upon the pleadings and being supported by four pages of testimony from the deposition of Mrs. Johnson. The plaintiff countered the motion with supporting affidavits and numerous depositions, exhibits, and documents. The trial judge rendered summary judgment on all claims in favor of the bank and the estate, without an opinion.
Summary judgment is appropriate under Rule 56, A.R.Civ.P., if, after the court considers the pleadings and other papers submitted, such as depositions, answers to interrogatories, admissions, affidavits, etc., there is no genuine issue as to any material fact. First National Bank of Birmingham v.Culberson, 342 So.2d 347, 351 (Ala. 1977). On a motion for summary judgment, the court can determine only whether evidence actually exists that will be offered at trial and that will raise factual issues to be tried. Committee Comments, Rule 56, A.R.Civ.P. Moreover, the scintilla evidence rule also applies to summary judgments. "If there is a scintilla of evidence supporting the position of the party against whom the motion for summary judgment is made, so that at trial he would be entitled to go to the jury, a summary judgment may not be granted." Harold Brown Builders, Inc. v. Jordan Co.,401 So.2d 36, 37-38 (Ala. 1981).
Appellant maintains that summary judgment was inappropriate in this case because genuine issues of fact regarding her claims based on money had and received, wrongful foreclosure, conspiracy, and negligence were presented before the trial court, and because those claims were supported by at least a scintilla of evidence. *Page 168 
 I. MONEY HAD AND RECEIVED
First, appellant contends that the bank foreclosed only on the 1967 mortgage at the foreclosure sale held on February 10, 1983, and that the 1967 mortgage did not contain a future advance clause. Thus, she argues, the bank should have remitted, in part, to her the excess funds obtained from the sale.
The law in Alabama is clear that a mortgage for a specific debt cannot be used to secure any subsequent advances in the absence of an express provision securing future indebtedness.First State Bank of Franklin County v. Ford, 484 So.2d 407, 408
(Ala. 1986); Cooper v. Elba Exchange Bank, 496 So.2d 41, 43
(Ala. 1986). Moreover, "[w]hen property is sold at a foreclosure sale, conducted under the power of sale contained in a mortgage, at an amount greater than the indebtedness secured by the mortgage, the mortgagee is liable to the mortgagor for the surplus." Davis v. Huntsville ProductionCredit Ass'n, 481 So.2d 1103, 1106 (Ala. 1985). Consequently, appellant is correct in her argument relating to the claim based on money had and received if, indeed, the bank foreclosed only on the first mortgage.
The record on appeal shows that the mortgage foreclosure deed and the auctioneer's memorandum of sale failed to indicate that the bank's second (1968) mortgage had been foreclosed. Appellees maintain that the notice of mortgage foreclosure, which listed both mortgages to be foreclosed upon, proves that both mortgages were foreclosed. They also argue that because Mr. and Mrs. Johnson understood that the bank intended to foreclose on both mortgages, the sale, in effect, worked as a foreclosure as to both mortgages. While the notice of the foreclosure sale evidenced an intent on the part of the bank to foreclose both mortgages, nevertheless the fact remains that only the first mortgage was foreclosed, according to the foreclosure deed and the auctioneer's memorandum of sale. Under these facts, summary judgment in favor of the bank on this issue was clearly erroneous.
 II. WRONGFUL FORECLOSURE III. CONSPIRACY
Appellant also contends that sufficient evidence was produced at the summary judgment hearing showing that the bank, acting through its vice president, Fred Clark, foreclosed on the Johnson property for the purpose of interfering with appellant's rights under the divorce judgment and that Mr. Johnson and Mr. Clark conspired in an improper foreclosure. Appellant alleged that the intended purpose of the foreclosure was to allow Mr. Johnson to purchase at the sale, become the new owner of the property, and thus have an opportunity to subsequently sell the property for an amount above the mortgage debt and to retain the excess proceeds for himself only. The deposition of Fred Clark, the bank officer who handled the loans to the Johnsons, shows that Mr. Clark was aware of the terms of the Johnsons' divorce judgment and had a close personal relationship with Mr. Johnson. This deposition was submitted by the appellant in opposition to the summary judgment motion.
 Wrongful Foreclosure
Regarding the wrongful foreclosure claim, it is generally recognized under Alabama law that a power of sale given under a mortgage affords the mortgagee an additional and more speedy remedy for recovery of the debt. Paint Rock Properties v.Shewmake, 393 So.2d 982, 984 (Ala. 1981). However, the mortgagee cannot use the power of sale for purposes other than to secure the debt owed by the mortgagor. Any improper use of the power for such purposes as oppressing the debtor, or serving the purposes of other individuals, will be considered by the court as a fraud in the exercise of the power. See,Shewmake, supra, at 983-84, quoting Abel v. Fricks, 219 Ala. 619,123 So. 17 (1929).
The events occurring on the day of the foreclosure sale raise at least a scintilla of evidence that the bank foreclosed on the mortgage illegitimately. The depositions *Page 169 
of Fred Clark and Oscar Vaughn, another loan officer of the bank, state that the reason for the foreclosure was that the debt had risen to a level where the debt exceeded the value of the secured property, and that Mr. Johnson "couldn't pay" on the debt. The bank, however, then loaned this same Mr. Johnson
$29,150.02 to purchase at the sale, without requiring any additional security for the new six-month note and mortgage. The rationale of such a transaction, in light of the stated reasons for foreclosure, evades logical analysis. The bank officers assert that they lent Mr. Johnson the money to purchase at the foreclosure sale because he was going to subsequently obtain long-term financing of the mortgage and possibly pay off the debt. But this explanation does not adequately explain why the bank chose to go forward with the foreclosure when it could have simply renewed the mortgage debt for another six months.
The summary judgment procedure is not a substitute for the trial of disputed issues of fact. The facts concerning the purpose of the foreclosure were in dispute and were material to the wrongful foreclosure claim. Appellant presented at least a scintilla of evidence in support of that claim. Consequently, summary judgment in favor of the bank on this issue was incorrect.
 Conspiracy
In addressing the appellant's conspiracy claim, we note that this Court has recently stated that the substantive tort of conspiracy consists of the following elements:
 "[T]he combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means."
Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305-06
(Ala. 1986).
As discussed earlier, there was evidence that the bank, acting through Fred Clark, foreclosed to deprive the appellant of her rights under the divorce judgment. Mr. Johnson's purchase at the foreclosure sale evidences his involvement in the alleged conspiracy between the two men. The first alternative element of conspiracy listed above would be satisfied by either a wrongful foreclosure or an interference with the divorce judgment. The third alternative would also be satisfied: the evidence indicates that the defendants did something that was unlawful, oppressive, or immoral, i.e., that they interfered with the divorce judgment; by unlawful, oppressive, or immoral means, i.e., a wrongful foreclosure. The unusual circumstances surrounding the foreclosure sale, as with appellant's wrongful foreclosure claim, likewise present at least a scintilla of evidence in support of appellant's conspiracy claim. We, therefore, reverse the summary judgment in favor of both defendants on this issue.
Furthermore, the affidavit of Jennifer Stinson, also submitted by the appellant in opposition to the motion for summary judgment, alleged sufficient facts indicating conspiracy and wrongful foreclosure to preclude summary judgment on these issues. Appellees argue that the affidavit was inadmissible because it consisted of alleged statements made by Mr. Johnson to Jennifer Stinson just before he died and thus violated the Dead Man's Statute, and that it was also hearsay. But, appellees have failed to adequately show that Ms. Stinson has a pecuniary interest in this suit. Code of 1975, § 12-21-163. Nor have they shown that the alleged statements would not fall within an exception to the hearsay rule as declarations against interest.
The trial court also granted summary judgment on appellant's charge that the bank and Gerald Johnson conspired to deprive Mrs. Johnson of the excess funds obtained from the foreclosure sale. On this issue, appellant failed to show even a scintilla of evidence that such a conspiracy occurred. Although there was evidence that indicated that the bank and Gerald Johnson conspired to wrongfully foreclose, and that the bank may have improperly *Page 170 
failed to remit excess proceeds to Mrs. Johnson, she failed to produce any evidence demonstrating that the defendantsconspired to deprive her of any monies due her after the foreclosure sale. Therefore, summary judgment was appropriate in favor of the defendants on this issue.
 IV. NEGLIGENCE
Appellant's final contention on appeal is that the trial court erred in granting summary judgment in favor of the bank on her claim that the bank acted negligently when it foreclosed on the final mortgage executed by Gerald Johnson. Appellant asserts that Gerald Johnson exercised his statutory right of redemption by purchasing at the foreclosure sale in February. Relying upon Dominex, Inc. v. Key, 456 So.2d 1047
(Ala. 1984), appellant argues that, because the Johnsons originally owned the property as co-tenants, legal title to the property vested automatically in both Mr. and Mrs. Johnson when Gerald "redeemed" the property by purchasing at the sale. Consequently, she contends, when the bank secured the final mortgage from only Gerald Johnson, the subsequent foreclosure of that mortgage affected only Gerald's interest, and the bank was therefore negligent in not recognizing appellant's legal interest in the property before conveying the property to the third party.
The basis of appellant's argument is that Gerald Johnson exercised a statutory right of redemption by purchasing at the foreclosure sale. Assuming, arguendo, this to be true, legal title would not have automatically vested in Mrs. Johnson also. Legal title would have vested only in Gerald Johnson, subject to Mrs. Johnson's equitable right as a co-tenant to contribute her proportionate share of the redemption price within a reasonable time. Dominex, Inc., supra, at 1060-61. Appellant's assumption, however, is flawed for another reason. The statutory right of redemption provided by Code of 1975, §6-5-230, can spring into existence only after the foreclosure of the mortgage. Butler v. Fayette Seed Farms, Inc., 280 Ala. 482, 195 So.2d 534 (1967). One of the purposes of this statutory right is to allow the mortgagor one year to redeem his interest in real estate sold to another pursuant to the foreclosure of a mortgage. Gerald Johnson's purchase at the foreclosure sale was not an act of redemption under § 6-5-230,supra. Therefore, appellant's contention that she had legal title to the property is without merit. Consequently, the summary judgment in favor of the bank on appellant's claim against the bank based on negligence was properly granted.
For the reasons stated, the judgment of the circuit court is due to be, and it hereby is, affirmed in part and reversed in part, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
[1] The complaint was later amended to add SouthTrust Bank of Coffee County, as successor of Elba Exchange Bank.