**In Re Morcell O'NEAL, Debtor.**

**Bankruptcy No. 390–36620–H13.**

United States Bankruptcy Court,
D. Oregon.

July 10, 1992.

412

Sandra Duffy, Asst. County Counsel, Portland, Or., for the creditor County.

Willis Anderson, Portland, Or., for debtor.

Robert Myers, Portland, Or., trustee.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon the debtor's motion to compel Multnomah County ("County") to accept certain payments under a confirmed chapter 13 plan.

The debtor suffered a pre-petition foreclosure judgment on her residence, which she values at $30,000, for failure to pay approximately $4,520 in real property taxes. The County filed a claim for the delinquent taxes and the debtor's plan proposed to pay the County's claim in full as a secured claim at the rate of $85 monthly. At this rate, the default would be cured in 53 months. The plan was confirmed without objection.

The chapter 13 trustee began sending payments to the County pursuant to the confirmed plan. The County rejected the payments and wrote a letter explaining the rejection to the trustee. The County's letter to the trustee states that the County considers the debtor's only option is to redeem the property within 2 years [pursuant to O.R.S. 312.120(2)] plus 60 days (under 11 U.S.C. § 108) of foreclosure and that the County does not accept partial redemption payments during that time.

The debtor filed a motion to compel the County to accept the payments as provided in the plan. The County filed a memorandum of law in which the County takes the position that the County owns the property subject to the debtor's redemption rights and that the County holds no claim against the estate.

The court held a hearing on the motion and gave the County two weeks to file a further memorandum of law and the debtor two weeks thereafter to respond. Neither the County nor the debtor has filed a subsequent memo, both parties apparently submitting the matter to the court on the record as of the hearing on the debtor's motion.

■ Pursuant to 11 U.S.C. § 1327(a): "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

The County was listed as a creditor in the debtor's schedules and was notified of the case, the provisions of the proposed plan and the date of the confirmation hearing. The County does not deny any of these facts.

The debtor's plan clearly shows the County as a secured creditor to be paid $85 monthly to cure the default in the real property taxes. With a default of $4,520, the debtor's plan will require 53 months to cure the default. This is considerably more than the 2 years and 2 months the County contends is available to the debtor to redeem the property.

In spite of the fact that the County was aware of the bankruptcy case and the provisions of the proposed plan, the County failed to object to confirmation or file any documents with the court. Pursuant to 11 U.S.C. § 1327(a), the County is bound by the plan and cannot now refuse to accept the payments under the plan. Even if the court erred in confirming the plan, the County's remedy was to appeal the order of confirmation. Since this was not done, the issue is *res judicata* and cannot now be raised.

Even if the County had timely raised an objection to confirmation, however, the court would have overruled the objection on the merits.

■ Contrary to the implicit premise in the County's memorandum of law, the question is not who owns the property. The pivotal question is whether the debtor had an interest in the property that became property of the estate pursuant to 11 U.S.C. § 541. The County concedes that the debtor had an interest in the property at the time the petition in bankruptcy was filed by virtue of her statutory right of redemption. The estate succeeded to the debtor's interest in the property at the time the petition was filed. Thereafter, pursuant to the Supremacy Clause of the United States Constitution, the Bankruptcy Code controls the debtor's/estate's rights vis-a-vis the County regardless of contrary state law. See *In re Hurt*, 136 B.R. 859 (Bankr. Or.1992) for a detailed discussion of this concept.

The fact that the debtor has no personal liability for the taxes and the County apparently now makes no claim against the estate does not change the result.[1] 11 U.S.C. § 101(10)(A) states that "creditor" means an "entity that has a claim against the debtor."

The United States Supreme Court recently instructed, in the case of *Johnson v. Home State Bank*, —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), that a lien on a debtor's property is a "claim" under 11 U.S.C. § 101(5) that can be dealt with in a chapter 13 plan even though the debtor has no personal liability to the lienholder.

The Supreme Court was very clear in its opinion that the definition of the term "claim" was intended by Congress to be as broad as possible and includes a right to payment or a right to a contingent, equitable remedy.

■ Here, the County had foreclosed on the property before the case was filed but, under Oregon law, the debtor could redeem the property within 2 years. O.R.S. 312.-120(2). Thus, the prepetition foreclosure did not complete the tax collection process and the County still had a "right to payment" or, at least, a contingent right to permanently foreclose the debtor's interest in the property. The County's right to clear title to the property was contingent on the debtor's failure to redeem within the allotted time.

■ Had the debtor's right to redeem within 2 years expired before the filing of her petition in bankruptcy, she would have been permanently foreclosed of any interest in the property and her subsequent filing of a petition in bankruptcy would have been to no avail. However, at the time the petition in bankruptcy was filed in this case, the debtor still had an interest in the property because the redemption period had not expired and, as the County recognized when it filed its proof of claim, the County still held a "claim" that could be dealt with in a chapter 13 plan.

■ Pursuant to 11 U.S.C. § 1322(b)(3), the debtor's plan may "provide for the *curing* or waiving of *any default*." [2] (Emphasis added). A detailed analysis of the relevant statutory language follows.

The meaning of the word "cure" has been discussed by many courts. One of the seminal cases discussing this issue is *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982). In *Taddeo*, the court explained that "cure," as used in Bankruptcy Code, relates to the event which triggered a default. By providing for a cure of this event, the debtor restores the *status quo ante* as if the de-

---

1. It should also be noted that the County's assertion that it holds no claim against the estate is flatly contradicted by the proof of claim filed on its behalf which states, in part, the following: "[T]hat the above named bankruptcy, was at and before the filing by (or against) him/her of the petition for adjudication of bankruptcy, and still is, justly and truly indebted to Multnomah County, State of Oregon, in the sum of $4,682.70, with interest accruing at 1⅓% per month."

Thus, the County has admitted in prior pleadings that it holds a claim against the estate.

2. It is worthy of note that 11 U.S.C. §§ 1322(b)(2) and (5) do not apply in this case since the County does not hold a "security interest" as defined in 11 U.S.C. § 101(51).

fault had never occurred. In *Taddeo*, the debtor's cure restored his pre-default interest in the real property in question. If the debtor is able to cure in the instant case, the same result will obtain.

■ The word "any" in the emphasized language from the statute would allow a debtor to cure "any" default regardless of the consequences of such cure to the estate. It would be pointless, however, to allow a debtor to cure a default that related to property in which the estate has no interest. Thus, it would be absurd to interpret § 1322(b)(3) to allow a debtor to cure a non-debtor's default where such cure will result in no benefit to the debtor or the creditors of the estate. If the statute were interpreted in this manner, none of the goals of bankruptcy would be accomplished and the statute might raise constitutional issues.

Thus, by reading § 1322(b)(3) in a vacuum, one encounters great difficulties. It is axiomatic that statutes which are part of a related code of law should not be construed in isolation and that no statute should be read in a manner as to render it unconstitutional if another, constitutional construction is reasonable.

It seems reasonable to read § 1322(b)(3) with reference to § 541 which defines property of the estate. Such a reading would lead to a logical limit on the word "any" in the phrase "cure any default." The limit would be that a debtor may cure any default as long as the default relates to property in which the estate holds an interest. This limit would prohibit a debtor or trustee from curing a default that affected an interest in property that did not become property of the estate. This interpretation does no harm to the statutory language and is consistent with the goals of bankruptcy and the limits of the Constitution.

■ Given the above, the only remaining question is the meaning of the word "default" in § 1322(b)(3). "Default" is not defined in the Code. The word should, therefore, be given its ordinary meaning. See, for example, *Helvering v. Hammel*, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303 (1941). Black's Law Dictionary (revised fourth edition) defines the term default as "a failure" or an "omission." The Bankruptcy Appellate Panel recently concluded that the term "default" in this context necessarily implies the existence of a contractually-imposed duty on one party. *In re Braker*, 125 B.R. 798 (9th Cir.BAP 1991). While the term "default" may imply the existence of an agreement, such is not necessarily the case.

The term "default" does not necessarily contemplate any legal duty to act. For example, a defendant who fails to timely file an answer has "defaulted" even though the defendant had no legal duty to appear.

The term "default" does, however, contemplate that a loss of some kind may be suffered by the party failing to act. Hence, any failure to act where that failure results in adverse consequences to the non-acting party is a default.

In this case, the debtor failed to pay the taxes on her property as they became due. Her failure to do so will result in a loss to her estate of approximately $25,000 (approximate value of the property = $30,000, less taxes of approximately $5,000 = $25,000) if it cannot be cured. Thus, even though the debtor had no personal liability for the taxes (no legal duty to pay the taxes), the debtor "defaulted" by failing to timely do so.

As previously stated, however, the debtor's default did not deprive her of all interest in the property. In fact, at the time the case was filed, the debtor still held an interest in the property by virtue of her right of redemption. This interest in the property became property of the bankruptcy estate under § 541(a). Pursuant to § 1322(b)(3), the debtor's plan proposes to cure the default that resulted in her present, diminished interest in the property by paying the taxes in full, including interest, within the life of the plan. Such a cure will reinstate the debtor's pre-default interest in the property. *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982).

Since the County is bound by the terms of the debtor's confirmed plan, the County would seem well-advised to accept the pay-

ments tendered by the debtor through the trustee's office. The County shall inform the trustee within 30 days hereof whether payments by the trustee will be accepted. If payments are to be refused, the trustee shall retain the payments that would have been tendered to the County in a separate account until he has accumulated sufficient funds to pay the claim in full. (Interest shall be calculated as if payments were accepted by the County as they are received by the trustee.) When the trustee has sufficient funds to pay the claim in full as just indicated, the trustee shall again tender payment to the County. If the tender is refused, the trustee or debtor may seek an order, declaring the debtor to be owner of the property free and clear of the claim for taxes set forth in the proof of claim of the County. The County shall be restrained from selling, encumbering or otherwise transferring the property without order of this court.