**In re Earnest McKINNEY and Annie (NMN) McKinney, Debtors.**

**Bankruptcy No. 94–11460–MAM–13.**

United States Bankruptcy Court, S.D. Alabama.

Oct. 3, 1994.

William E. Kimbrough, Thomasville, AL, for debtors.

Goodman G. Ledyard, Mobile, AL, for movant Jim Walter Homes, Inc.

### ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter is before the Court upon the motion of Jim Walter Homes, Inc., for relief from the automatic stay pursuant to 11 U.S.C. § 362 in order to obtain possession of real estate. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). Proper notice of the hearing was given and appearances were as noted in the record.

### I. FACTS

This case involves husband and wife debtors who filed two bankruptcy proceedings in 1993 to deal with their financial problems, including problems with their home mortgage. Their second bankruptcy was dismissed on January 21, 1994, and the debtors, as a part of the dismissal order, were enjoined from any new bankruptcy filings for 180 days or until July 22, 1994. Upon dismissal of that second case, Jim Walter Homes, Inc. was free to proceed with foreclosure of the mortgage on the debtors' property. It did. On July 18, 1994, the foreclosure sale occurred. On July 28, 1994, after the expiration of the injunction period, the debtors filed a third bankruptcy case under Chapter 13 of the Bankruptcy Code.[1] The debtors have proposed a Chapter 13 plan which would revive their Jim Walter Homes, Inc. mortgage, cure the arrearages on the note during the life of the plan, and allow them to pay the normal monthly mortgage payments to Jim Walter Homes, Inc. directly outside the plan and continue to do so after the case is over. The plan confirmation hearing is scheduled to be held on October 6, 1994. Jim Walter Homes, Inc. filed this Motion for Relief from the Stay on August 10, 1994 and seeks relief under §§ 362(d)(1) and (2) on the basis that the

---

1. The debtors filed their bankruptcy case on the tenth and last day of the period allowed to mortgagors under Alabama law to retain possession of their homestead if they wish to retain their statutory redemption rights. Code of Alabama, § 6–5–251 (1975). The debtors remain in possession. But for the filing of the bankruptcy case which stayed Jim Walter Homes, Inc. from obtaining possession of the premises, the debtors would have forfeited their statutory redemption rights by not vacating the property by now.

plan of debtors cannot be confirmed as a matter of law.[2] Jim Walter Homes, Inc. alleges that a mortgage, once properly foreclosed, is not subject to reinstatement and cure under 11 U.S.C. §§ 1322(b)(2), (3) or (5). For the reasons stated below, the motion of Jim Walter Homes, Inc. is granted.

## II. LAW

The court must answer two questions to resolve this issue. 1) Under Alabama law, after a foreclosure sale has occurred, what are the rights of a mortgagor in relation to the foreclosed mortgage? 2) Based upon these rights, what can a plan provide under 11 U.S.C. § 1322(b) as to the mortgage?

### A.

■ There is no federal foreclosure law and therefore the court's starting point in determining a mortgagor's status vis á vis a foreclosed mortgage is state law. In this case, the applicable law is Alabama foreclosure law. The United States Supreme Court has long recognized the right of states to regulate property interests in the individual states. In *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court concluded the following:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers Nat'l Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 [ (1961) ]. The justifications for application of state law are not limited to ownership interests; they apply with

equal force to security interests ... the basic federal rule is that state law governs. *Id.* at 55, 99 S.Ct. at 918, 919.

■ In a recent decision, the Supreme Court again reiterated this view, specifically as to state foreclosure law. In *BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1764, 128 L.Ed.2d 556, 580 (1994), the Court stated:

Federal statutes impinging upon important state interests cannot ... be construed without regard to the implications of our dual system of government ... When the Federal Government takes over ... local radiations in the vast network of our national economic enterprise and thereby radically readjusts the balance of state and national authority, those charged with the duty of legislating (must be) reasonably explicit ... It is beyond question that an essential state interest is at issue here: we have said that "the general welfare of society is involved in the security of the titles to real estate" and the power to ensure that security "inheres in the very nature of (state) government" ... To displace traditional State regulation in such a manner, the federal statutory purpose must be "clear and manifest" ... (cites omitted).

Thus Alabama foreclosure law controls the rights of mortgagors and mortgagees unless clearly and manifestly displaced by federal law.

■ Alabama law provides two types of redemption for mortgagors who default. The first type is an equitable right of redemption which exists under the loan documents and which exists prior to the extinguishment of the mortgage by foreclosure. *Alabama Home Mortgage Co. v. Harris,* 582 So.2d 1080 (Ala.1991). The second type of redemption is a one-year statutory right of redemption which arises at the time of a foreclosure sale. *Dominex, Inc. v. Key,* 456 So.2d 1047 (Ala.1984); *Trauner v. Lowrey,*

---

**2.** At the relief from stay hearing, the debtors claimed the value of the real property in question was $40,000 which was also the value listed on their schedules. At the foreclosure sale, Jim Walter Homes, Inc. credit bid $40,872.87 which was some or all of the debt owed on the mortgage. The debtors were at least two (2) mortgage payments in arrears. There was no equity in the property since the credit bid, representing the amount owed on the mortgage, was more than the debtors' own valuation. The only burden on Jim Walter Homes, Inc. at a relief from stay hearing pursuant to 11 U.S.C. § 362(g)(1) was satisfied.

369 So.2d 531 (Ala.1979); Code of Alabama, §§ 6–5–248(a) and (b) (1975). Section 6–5–248 states in pertinent part:

(a) Where real estate, or any interest therein, is sold the same may be redeemed by:

(1) Any debtor, including any surety or guarantor.

.    .    .    .    .

(b) All persons named or enumerated in subdivisions (a)(1) through (a)(7) may exercise the right of redemption granted by this article within one year from the date of the sale.

To determine the beginning of the statutory redemption period, the Alabama statute focuses on the word "sale." *Alco Land & Timber Co. v. Baer*, 289 Ala. 567, 269 So.2d 99 (1972). The term "sale" is defined as "any execution, judgment, or foreclosure sale, whether the sale is made under any power of sale in any mortgage or deed of trust or statutory power of sale, or by virtue of any judgment, in any court of competent jurisdiction." Code of Alabama, § 6–5–247(1) (1975). The statutory right of redemption arises when the foreclosure sale occurs.

■■■ Foreclosure marks the end of the mortgagor's equitable right of redemption. *FDIC v. Morrison*, 747 F.2d 610 (11th Cir. 1984). After the foreclosure sale, the equity of redemption under the mortgage is completely extinguished. There is no further mortgage to sustain such an equitable right. *Allison v. Cody*, 206 Ala. 88, 89 So. 238 (1921). The mortgagee is no longer a secured creditor of the debtor. The mortgagee owns the property. *FDIC, supra; Dominex, supra.* After the foreclosure, there is a merger of legal and equitable titles. *Tomkins v. U.S. & IRS*, 946 F.2d 817 (11th Cir.1991); *Barnett & Jackson v. McMillan*, 176 Ala. 430, 58 So. 400, 401 (1912) (when the legal title becomes united with the equitable title so that the owner has the whole title, the mortgage is merged by the unity of possession).

■■■ Foreclosure marks the beginning of the mortgagor's statutory right of redemption. *Hamm v. Butler*, 215 Ala. 572, 112 So. 141 (1927); *Johnson v. Shirley*, 539 So.2d 165 (Ala.1988); *In re Saylors*, 869 F.2d 1434 (11th Cir.1989) (*citing Wragg v. Federal Land Bank of New Orleans*, 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300 (1943)). Upon sale, a mortgagor has a one-year period to regain the property according to statutory means. To exercise a statutory right of redemption, debtors have to pay the full amount of the debt owed under the mortgage. The Alabama Supreme Court has decided that "the law does not allow piecemeal redemption, absent an agreement providing for it ..." *Costa & Head (Birmingham One) v. National Bank of Commerce of Birmingham*, 569 So.2d 360 (Ala.1990). This concept of full payment has recently been upheld in this district. In *Shields v. Federal Nat'l Mortgage Ass'n*, 1992 WL 687866, 1992 U.S.Dist. LEXIS 19567 (S.D.Ala. Dec. 14, 1992), the district court decided that "to redeem, a cash lump sum must be paid which includes the principal, interest and certain other charges." *Id.* at *3, 1992 U.S.Dist. LEXIS 19567 at 9; *In re Read*, 131 B.R. 188 (Bankr.M.D.Ala. 1991).

■■■ No party disputes that Jim Walter Homes, Inc. has properly foreclosed on the property at issue in this case. The foreclosure sale has been held. The mortgage has been extinguished. Therefore, under Alabama law, the only way to redeem the property is through a cash payment of the full amount of the mortgage debt under the right of statutory redemption.

### B.

■■■ This court must now determine what rights, if any, the debtors have to reinstate their mortgage through a Chapter 13 plan. After the July 28, 1994, bankruptcy filing, the debtors were subject to the constraints of the Bankruptcy Code in formulating a plan. Section 1322 of the Code contains 2 lists of provisions for Chapter 13 plans. Section 1322(a) lists items a plan must contain. Section 1322(b) lists provisions a plan may contain. Section 1322(b)(2) provides that Chapter 13 debtors may "modify the rights of holders of secured claims" except the claims of mortgagees that hold homestead mortgages. However, under Section 1322(b)(5), debtors are allowed to modify secured claims

secured by homesteads in a limited manner. Section 1322(b)(5) states that debtors may "provide for the curing of any default . . . and maintenance of payments while the case is pending on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Section 1322(b)(3) allows plans to "provide for the curing or waiving of any default." Based upon the discussion of Alabama foreclosure law above, this court concludes that after a foreclosure sale occurs, there is no "unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due." There is also no "default" to cure or waive. Therefore, there is no ability to cure and maintain mortgage payments under 11 U.S.C. § 1322(b)(3) or (5).

■■■ The Bankruptcy Code defines "claim" and "secured claim" at §§ 101(5) and 506(a) of the Code respectively. A claim is a "right to payment . . . secured or unsecured." A "secured claim" is one which is "secured by a lien on property in which the estate has an interest." Section 101(37) of the Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." In this case, the foreclosure sale extinguished the lien and, thus, the secured claim of Jim Walter Homes, Inc. under Alabama law. The mortgage merged in the title gained by Jim Walter Homes, Inc. upon foreclosure. Section 1322(b)(5) only allows the cure of defaults in "secured claims" which exist at the time of the bankruptcy case and Jim Walter Homes, Inc. had none. Also, the debtors only have a statutory right of redemption upon which payment is due in cash within one year. Assuming such a right is a claim,[3] the debtors cannot use § 1322(b)(5) to cure or maintain payments on this claim either. Section 1322(b)(5) only allows the cure of unsecured claims if the final payment is due after the end of the plan.

■■■ The debtors may owe an unsecured debt to Jim Walter Homes, Inc. This claim would be the difference between the mortgage amount and the amount bid in at the foreclosure sale by Jim Walter Homes, Inc.—the deficiency claim. This claim is also not a claim which can be modified under § 1322(b)(5). It is a claim which is due immediately. The final payment is not due after the conclusion of the plan.

■■■ The third provision of § 1322(b) which is arguably applicable to these debtors' plan is § 1322(b)(3). It provides that a Chapter 13 plan may provide for the "curing or waiving of any default." If the default of the debtors in payment of their mortgage is the starting point for this analysis, then arguably the end result of that default—foreclosure—can be cured or waived. There are at least three reasons why this reasoning is unsound.

First, the debtors bring to a bankruptcy estate the bundle of assets, debts, rights and obligations they had at filing. Those property interests are governed by state law where regulated by state law. *Butner, supra.* In this case, the debtors had no mortgage, no secured claim or claimant, and no title to real property upon the filing of their bankruptcy case. Therefore, it is this Court's view that debtors had no "default" to cure or waive. A default is a "failure to perform an obligation." The McKinneys, by virtue of the foreclosure sale which extinguished their secured debt, had no "obligation to perform" as to the debt.[4]

■■■ Second, statutory construction requires that a specific statute will prevail over a general one. *Nobelman v. American Savs. Bank (In re Nobelman),* 968 F.2d 483, 488 (5th Cir.1992), *aff'd,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) ("General language of a statute does 'not prevail over

---

**3.** Alabama law states that a statutory right of redemption is a personal privilege and not a property right at all. Code of Alabama, § 6–5–250 (1975). Jim Walter Homes, Inc. has no "right to payment." 11 U.S.C. § 101(5). The right to redeem under the statute is an asset of whoever can claim an interest under the statute.

**4.** There was no evidence as to a deficiency claim offered at the hearing. If there were an unsecured deficiency claim, it was not a claim under the mortgage at the filing of the case. Cure of the deficiency claim would only result in full payment of it, not reinstatement of the mortgage which was nonexistent at filing.

matters specifically dealt with in another part of the same enactment' (cites omitted)"). Section 1322(b) contains two sections specifically dealing with the treatment of home mortgages in Chapter 13 plans, sections (b)(2) and (b)(5). To allow the general provision of § 1322(b)(3) to prevail over the other sections would violate this rule. Therefore, § 1322(b)(5) should control and § 1322(b)(3) should not apply to this situation. If § 1322(b)(3) does apply, it can only apply under this rule of statutory construction to mortgages which mature during the life of the plan since they are the only ones not specifically covered by § 1322(b)(5). 5 Collier on Bankruptcy § 1322.08[2]. The debtors' mortgage doesn't mature during their Chapter 13 case.

■ Third, as stated in *BFP, supra*, and *Butner, supra*, congressional intent to overrule or contradict state property law must be "clear and manifest." A review of the legislative history to § 1322 does not indicate that § 1322(b)(3) was intended to negate state law foreclosure rights and obligations. Article VI of the United States Constitution "requires state law to give way if it frustrates the implementation of a federal statutory scheme." *In re Schnupp*, 64 B.R. 763, 768 (Bankr.N.D.Ill.1986). Some courts have held that the preemption doctrine would override the ability of state law to cut off a mortgagor's right to cure defaults in a mortgage after a foreclosure judgment.[5] In *Grubbs v. Houston First Am. Savs. Ass'n*, 730 F.2d 236, 241–42 n. 9 (5th Cir.1984), the court stated:

To permit for Chapter 13 purposes, the variations of the laws of different states to govern the effect of an acceleration and its curability would be to defeat one of Congress' important purposes in exercising its preemptive bankruptcy powers under the federal Constitution, to provide by Chapter 13 a uniform national remedy by which to adjust debts of individuals with regular incomes as an alternative to their being forced to undergo liquidating bankruptcy. Along with [the Second Circuit Court of Appeals] "we do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be the primary beneficiaries of the new Code—to harsher mercies of state law."

This Court believes that bankruptcy equity policies and state law interests are both served by recognizing the foreclosure sale as the end point of the cure and reinstatement rights of debtors. All Alabama debtors, by the time of a foreclosure sale, have had ample opportunity to avail themselves of the protection of Chapter 13. The debtors in this case, in part through their two bankruptcy filings, precluded foreclosure for 1½ years. The bankruptcy policy has been served without contradicting Alabama state foreclosure law to do it.

■ This result is consistent with the view of the Eleventh Circuit as to this issue[6] although the Circuit Court has not decided this exact point; and the result follows the holding of five circuit courts that have directly addressed the issue.[7] All of the circuit

---

5. The *Grubbs* case and the cases cited in it are all preforeclosure sale cases. Whether due to the preemption doctrine or other statutory analysis, most cases have held that preforeclosure cure and reinstatement of mortgages is proper. This Court believes preemption is not necessary to reach the *Grubbs* result.

6. *Saylors, infra; Hoggle, infra.*

7. Five circuit courts have held that a completed foreclosure sale prohibits a cure and reinstatement of a mortgage under § 1322(b)(5). *Federal Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428 (6th Cir.1985), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Goldberg v. Tynan (In re Tynan)*, 773 F.2d 177 (7th Cir.1985); *In the Matter of Roach*, 824 F.2d 1370 (3d Cir.1987); *Justice v. Valley Nat'l Bank*

*(In re Justice)*, 849 F.2d 1078 (8th Cir.1988); *Boyd v. U.S. (The Matter of Boyd)*, 11 F.3d 59 (5th Cir.1994).

The Tenth Circuit, in *Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227 (10th Cir.1990) held that a Chapter 13 debtor could cure and reinstate a mortgage after a foreclosure judgment and order for sale had been obtained by the mortgagee. The foreclosure sale had not yet occurred. However, the court held that the proper cutoff date for cure rights is the foreclosure sale.

The First, Second, Fourth, Ninth, Eleventh and D.C. Circuits have not addressed the issue.

In a case interpreting Wisconsin law, the Seventh Circuit has also held that cure of a foreclosed mortgage was possible under § 1322(b)(5). *In re Clark*, 738 F.2d 869 (7th Cir.1984). The

courts that have decided this issue hold, in general, and based upon the foreclosure law of the state in question, that when a foreclosure sale is confirmed and title passes to the mortgagor, there is no "secured claim" to modify, "no default . . . on a secured claim" to cure under the language of §§ 1322(b)(2) or (5). The secured claim ceases to exist. Two Alabama bankruptcy courts have followed these circuit cases' reasoning as well. They find that no reinstatement of a foreclosed mortgage is possible. *In re Detter,* 141 B.R. 221 (Bankr.M.D.Ala.1991) and *In re Bozeman,* 174 B.R. 328 (Bankr.M.D.Ala. 1993). The Eleventh Circuit in the cases of *In re Saylors,* 869 F.2d 1434 (11th Cir.1989) and *In re Hoggle,* 12 F.3d 1008 (11th Cir. 1994) held that a mortgage could be reinstated by a Chapter 13 debtor pursuant to § 1322(b)(5) when a foreclosure sale had not yet occurred prior to the bankruptcy filing and postconfirmation arrearages could be cured through the plan. This result is consistent with the Court's holding in this case. Until the foreclosure sale, there is a mortgage to cure and reinstate, whether the arrearages are pre- or postconfirmation.

The opposing view arises from dicta in the *Glenn, supra,* decision which was one of the first cases to address this issue. The Court held that a debtor had no right to cure and reinstate a mortgage debt after foreclosure under Section 1322(b)(5) of the Bankruptcy Code. However, the Sixth Circuit opined that given the inconsistency of foreclosure laws from one state to another, the need for a uniform bankruptcy law may outweigh individual state property laws as to when the cure of a mortgage is no longer possible. *Id.* at 1436.

In *In re Ragsdale,* 155 B.R. 578 (Bankr. N.D.Ala.1993), a bankruptcy court in Alabama adopted and expanded upon this dicta. In *Ragsdale,* the court concluded that § 1322 allows a cure and reinstatement of the debtor's mortgage during the postforeclosure redemption period.[8] The court applied a "completion of sale" concept to determine when a debtor no longer can cure mortgage defaults. The *Ragsdale* court determined that completion of sale, "the time at which the debtor has been wholly divested of *any* rights in the property," is the "point at which cure becomes unavailable." *Ragsdale* at 586 (em-

---

*Clark* case is distinguishable from this case, however, since Wisconsin law is markedly different than Alabama law on foreclosure. In Wisconsin, a foreclosure judgment "does nothing but judicially confirm the acceleration." *Clark* at 874. A foreclosure sale must still occur. The Seventh Circuit specifically declined to consider "whether the same result obtained in a state in which the effect of a judgment in foreclosure is different." *Id.* In fact, the next year in *Tynan, supra,* the court did hold that the opposite result was appropriate under Illinois law which is more akin to Alabama law.

8. The *Ragsdale* opinion cites to language in a 1938 Supreme Court case, *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490, (1938) to explain its view that a mortgagor in default under a mortgage and a mortgagor in the statutory redemption period are in like circumstances and therefore should be treated the same. The language from *Wright* that is quoted is used to prove the analogy below:

> . . . No difference exists between a debtor in default and a debtor whose mortgage has been foreclosed but who holds a right of redemption. And if a debtor in default may cure by reversing the effects of acceleration of his mortgage and maintaining payments pursuant to the terms of the original contract, so may a debtor whose mortgage has been foreclosed.

*Ragsdale* at 586. What the *Wright* court stated is that a mortgagor with an accelerated mortgage and a mortgagor of a foreclosed mortgage outside bankruptcy for all practical purposes have "the same ultimate prospect"—to pay the mortgage debt in full or lose all rights to the property. *Id.* at 515, 58 S.Ct. at 1032. The court stated that both the equitable and statutory redemption rights arise out of the "relationship of debtor and creditor" and Congress may legislate about both. The court was not dealing with any legal distinctions between these positions in an actual bankruptcy case. The Supreme Court was responding to the mortgagee's argument that the provisions of the 1934 Bankruptcy Act providing an extended real estate redemption period for farmers in all states during the Depression years was outside Congress' power under the bankruptcy clause because once foreclosure occurred, no debtor-creditor relationships or debt existed. The court held the power of Congress to legislatively affect pre- and postforeclosure rights of mortgagees, mortgagors and purchasers at foreclosure sales was valid since the statutory redemption right is a "purchase in the liquidation of the indebtedness." *Id.* It was only in its discussion of the constitutional powers of Congress context that the court stated that preforeclosure and postforeclosure mortgagors are in the same position.

338

phasis in original). Although the rationale would aid struggling debtors to retain their homesteads, it does not comport with Alabama property law or the wording of § 1322(b). Section 1322(b) does not evidence a "clear and manifest" intent to contradict state property laws as would be required to reach the *Ragsdale* result. *BFP, supra.*[9]

■ It is the opinion of this court that title to the foreclosed property did pass to Jim Walter Homes, Inc. at the foreclosure sale and that the debtors have no right to cure their arrearages and reinstate their mortgage through their Chapter 13 plan. Section 1322 allows modifications only to the extent there exists something to modify. Once the debtors' claim to title is extinguished at the foreclosure sale, § 1322(b) is no longer applicable. Since there is no mortgage to modify or reinstate, the debtors' plan does not provide adequate protection to Jim Walter Homes, Inc. when it seeks to allow debtors to retain possession of the homestead and pay the mortgage over time. The plan is also not confirmable with this provision in it. Therefore, the debtor has not shown the property is necessary to an effective reorganization. *United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (debtor must have a plan "in prospect"). The debtors have not sustained their burden of proof under §§ 362(d)(1) or (2).

The motion of Jim Walter Homes, Inc. for relief from the automatic stay is granted as to the property described in Exhibit A.

## EXHIBIT A

Beginning at an iron axle found at the SW corner of the herein described tract of land on the east right of way line of Marengo County Highway No. 47 (which point has a record location of 31.60 feet south of and 498.63 feet east of the NW corner of the NE¼ of the NW¼ of Section 34, Township 14 North, Range 4 East Deed Book 7-K, Page 744-745). Proceed East (record bearing) with the McKinney North line for a distance of 216.35 feet to a galvanized pipe found at the McKinney North east corner (record distance of 210 feet); thence East for a distance of 372.55 feet to an iron rod (set); thence North for a distance of 150 feet; thence West for a distance of approximately 568.47 feet to the East right of way line of Marengo County Highway No. 47; thence Southerly along said East right of way line of said highway and on a concave West curve for a distance of approximately 150 feet to the point of beginning. The above described tract of land, lying and being situated partly in the NE¼ of the NW¼ of Section 34 and partly in the SE¼ of the SW¼ of Section 27 all in Township 14 North, Range 4 East, Marengo County, Alabama.

---

**9.** The *Ragsdale* case contains a compendium of citations to other cases dealing with this issue. Of the cites, only nine actually hold that § 1322(b) allows postforeclosure sale reinstatement of a mortgage. Two of the cases come from the *Ragsdale* court. *Commercial Fed. Mortgage Corp. v. Smith,* 170 B.R. 708 (N.D.Ala.1994), *appeal docketed,* No. 94–6802 (11th Cir. Aug. 26, 1994); *Fleet Mortgage Corp. v. Shaw,* 171 B.R. 129 (N.D.Ala.1994), *appeal docketed,* No. 94–6803 (11th Cir. Aug. 26, 1994). Six are from the same court in Oregon, five from the same bankruptcy judge and one from the district court adopting the bankruptcy court's position. *In re Rudolph,* 166 B.R. 440 (D.Or.1994); *In re Hollins,* 150 B.R. 53 (Bankr.D.Or.1993); *In re Ivory,* 146 B.R. 27 (Bankr.D.Or.1992); *In re Desrosiers,* 145 B.R. 671 (Bankr.D.Or.1992); *In re O'Neal,* 142 B.R. 411 (Bankr.D.Or.1992); *In re Ivory,* 32 B.R. 788 (Bankr.D.Or.1983). There is a case from this district, *In re Dickerson,* 130 B.R. 110 (Bankr.S.D.Ala.1991) which held that a foreclosure sale could be set aside under a Chapter 13 plan. The court reached this result based in part on a brief analysis of § 1322(b). The plan confirmation hearing was held in conjunction with a trial on an adversary complaint "requesting a declaratory judgment and coercive relief." The debtor raised issues as to the validity of the foreclosure sale based on lack of notice. The court's ruling set aside the mortgage foreclosure sale for unspecified reasons which may not have been reasons under § 1322(b). Therefore, the case is distinguishable and stands neither for the *Ragsdale* nor this Court's position.